Dale **BURNS**, et al., Plaintiffs,

v.

**PRUDENTIAL SECURITIES,** et al., Defendants.

No. 3:99CV7643.

United States District Court, N.D. Ohio, Western Division.

May 8, 2000.

918

Thomas A. Hargett, Maddox, Koeller, Hargett & Caruso, Indianapolis, IN, James R. Knepp, II, Robison, Curphey & O'Connell, Toledo, OH, Mark E. Maddox, Maddox, Koeller, Hargett & Caruso, Indianapolis, IN, David P. Meyer, Ricketts & Onda, Columbus, OH, Jon M. Myers, Starr, Austen, Tribbett & Meyers, Logansport, IN, Scott L. Starr, Starr, Austen, Tribbett & Meyers, Logansport, IN, for plaintiffs.

Bernard C. Daley, Ulmer & Berne, Cleveland, OH, Brian M. Eisenberg, Calfee, Halter & Griswold, Cleveland, OH, Stacey M. Garrett, Keesal, Young & Logan, Long Beach, CA, James R. Greene, Keesal, Young & Logan, Long Beach, CA, Robert N. Rapp, Calfee, Halter & Griswold, Cleveland, OH, Terry Ross, Keesal, Young & Logan, Long Beach, CA, Michael N. Ungar, Ulmer & Berne, Cleveland, OH, for Defendants.

## ORDER

CARR, District Judge.

This is a class action case in which plaintiffs, current and former clients of Prudential Securities (Prudential), allege that a broker at Prudential liquidated their accounts without their approval, thereby violating their brokerage contracts. Pending are defendants' motions to dismiss (Docs. 6 and 15) and plaintiffs' motion for remand (Doc. 22). For the following reasons, defendants' motions are denied and plaintiffs' motion is granted.

## BACKGROUND

Plaintiffs are a class of Prudential clients whose accounts were managed by Jeffrey Pickett, a broker employed in Prudential's Marion, Ohio branch office. At the time plaintiffs established their ac-

counts, each entered into a contract for brokerage services with Prudential. The brokerage contracts specified that plaintiffs would make investment decisions with regard to their accounts, and that Prudential could not sell, purchase, or otherwise trade account assets without plaintiffs' consent.

Plaintiffs allege that on or about October 8 and 9, 1998, Mr. Pickett, without notice to or authorization from plaintiffs, sold a substantial majority of the stock and other assets in plaintiffs' accounts. Because these sales took place without plaintiffs' consent, they claim that the sales violated their brokerage contracts.

On September 10, 1999, plaintiffs sued Mr. Pickett and Prudential in the Court of Common Pleas of Marion County, Ohio. Plaintiffs' complaint included four state law causes of action: 1) conversion, 2) breach of contract, 3) breach of fiduciary duties, and 4) negligent supervision. (*See* Doc. 1 at Ex. 1).

Defendants removed the case to federal court. Removal was based on the presumed applicability of a federal statute, the Securities Litigation Uniform Standards Act of 1998 (SLUSA), to plaintiffs' lawsuit. SLUSA amended the Securities Exchange Act of 1934, and it provides for the removal of "covered class actions" based on state law claims alleging either a "misrepresentation or omission of a material fact" or use of "any manipulative device or contrivance" in connection with the purchase or sale of a covered security. *See* 15 U.S.C. §§ 78bb(f)(1) and (2).

Defendants now move for dismissal under SLUSA. Plaintiffs seek remand to state court, alleging that SLUSA does not apply to this case.

## REMOVAL

Removal is governed by 28 U.S.C. § 1441, *et seq.* The Supreme Court has admonished lower courts to read § 1441 narrowly with "[d]ue regard for the rightful independence of state governments...." *Shamrock Oil & Gas Corp. v. Sheets, et al.,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). *See also Long v. Bando Manufacturing of America, Inc.,* 201 F.3d 754, 757 (6th Cir.2000) ("[R]emoval statutes are to be narrowly construed."); *Musson Theatrical, Inc., et al. v. Federal Express Corp.,* 89 F.3d 1244, 1252 (6th Cir.1996) ("The Constitution allows federal courts only a limited and special jurisdiction, and powers not given to the federal courts by Congress are reserved to the primary repositories of American judicial power: state courts."). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc., et al. v. Williams, et al.,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Absent diversity of citizenship, federal-question jurisdiction is required. *Id. See also Franchise Tax Board v. Construction Laborers Vacation,* 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ("[A] defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law.").

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425 (citing *Gully v. First National Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). This rule makes the plaintiff the master of the claim; the plaintiff may avoid federal jurisdiction by exclusive reliance on state law. *Id.*

Consistent with the well-pleaded complaint rule, a case generally cannot be removed to federal court on the basis of a federal defense, including the defense of preemption. *Caterpillar,* 482 U.S. at 392–93, 107 S.Ct. 2425. But there is an exception, known as the "complete preemption" doctrine. *Id.* "On occasion, ... the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a

federal claim for purposes of the well-pleaded complaint rule.' " *Id.* (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law. *Id.* (citing *Franchise Tax Board,* 463 U.S. at 24, 103 S.Ct. 2841)). In such cases, the state claims are treated from the outset as federal in nature. *Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. 2841. *See also Striff v. Mason,* 849 F.2d 240, 244 (6th Cir.1988) (the "well-pleaded complaint rule is not absolute," and "an action may be removed 'where the real nature of the claim asserted . . . is federal, irrespective of whether it is so characterized.' ") (citations omitted).

■ State claims are preempted and therefore removable to federal court only when there is a "clearly manifested" intent by Congress. *Taylor,* 481 U.S. at 64, 107 S.Ct. 1542. The party seeking removal bears the burden of establishing its right thereto. *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit,* 874 F.2d 332, 339 (6th Cir.1989) (citing *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97–98, 42 S.Ct. 35, 66 L.Ed. 144 (1921)). All doubts are to be resolved against removal. *Wilson v. USDA,* 584 F.2d 137, 142 (6th Cir.1978).

## DISCUSSION

In this case, the removal issue is dispositive of defendants' motions to dismiss.

That is, if I find that defendants properly removed plaintiffs' lawsuit to federal court, then, under SLUSA, it follows that those claims must be dismissed.[1] Conversely, if I determine that the case should be remanded to state court, defendants' motions to dismiss will have been made moot.

Thus, the question presented here is relatively straight-forward: did Congress "clearly manifest" a desire, in passing SLUSA, to preempt the kinds of state law claims alleged by plaintiffs in their class action complaint, thereby permitting removal in accordance with the complete preemption doctrine?

Plaintiffs argue that Congress adopted SLUSA to eliminate strike-suits—i.e., suits in which issuers of securities were being accused of defrauding the public by disseminating false prospectuses, tender offers, initial public offerings, proxies, and similar materials. In doing so, plaintiffs assert that Congress took care not to preempt state law claims that traditionally fell outside the purview of the Securities Act. Plaintiffs argue that claims against brokers for breach of contract, such as are asserted in this case, simply are not covered by SLUSA. Plaintiffs further point out that they have made no allegation of securities fraud against defendants, and that none of their state law claims require that they prove fraud.

Defendants counter that plaintiffs' state law claims all are based on Mr. Pickett's alleged failure to inform plaintiffs that their accounts were being liquidated. Such conduct, defendants contend, consti-

---

**1.** No complaint shall be dismissed unless the plaintiff has failed to allege facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When deciding a motion brought pursuant to Rule 12(b)(6), the inquiry is substantially limited to the contents of the complaint, though matters of public record, orders, items appearing in the record, and attached exhibits also may be taken into account. *See Yanacos v. Lake County,* 953 F.Supp. 187, 191 (N.D.Ohio 1996). The allegations stated in the complaint must be accepted as true, *Hishon v.*

*King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), and viewed in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

SLUSA permits removal of "covered class actions" asserting state law claims that meet the criteria set forth at 15 U.S.C. § 78bb(f)(1). *See* 15 U.S.C. § 78bb(f)(2). If a case is removable, dismissal likewise would be appropriate, because both removal and dismissal are predicated on satisfaction of the same § 78bb(f)(1) criteria.

tutes either 1) a "misrepresentation or omission of a material fact," or 2) use of a "manipulative device or contrivance." *See* 15 U.S.C. § 78bb(f)(1). This, in defendants' view, brings plaintiffs' complaint within the ambit of SLUSA. (Doc. 1 at ¶ 5).

I agree with plaintiffs. There is little support for defendants' position that Congress clearly manifested an intent to preempt the state law claims alleged by the class in this case.

### I. What SLUSA Preempts

■ In 1998, Congress passed SLUSA to establish the federal courts as the "exclusive venue for most securities fraud class action[s]" involving nationally traded securities. H.R. Conf. Rep. No. 803, 105th Cong., 2d Sess. at 13 (1998) (House Report). By steering most securities fraud cases to the federal courts, SLUSA intended to "prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than Federal, court." *Id.*

The federal protections being evaded by plaintiffs were those contained in the Private Securities Litigation Reform Act of 1995 (PSLRA). Congress passed PSLRA to guard against abusive and meritless "strike" suits. Strike suits are suits designed to "extract a sizable settlement from companies that are forced to settle, regardless of the lack of merits of the suit, simply to avoid the potentially bankrupting expense of litigation." *Id.* PSLRA confronted the problem of strike suits by: 1) establishing a heightened pleading burden, 2) staying discovery during the pendency of motions to dismiss, and 3) creating a "safe harbor" for certain forward-looking statements. *See* 15 U.S.C. §§ 77z–1 and 78u–4.

Following PSLRA's enactment, plaintiffs avoided its proscriptions by filing strike suits in state court. To prevent this end-run, *id.*, Congress passed SLUSA. *Abada v. Charles Schwab & Co., Inc.*, 68 F.Supp.2d 1160, 1165 (S.D.Ca.1999).

SLUSA explicitly permits removal of, and, therefore, preempts, "covered class actions" based on state law claims in which plaintiffs allege:

(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or other contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. §§ 78bb(f)(2). In the absence of allegations meeting these criteria, set forth at § 78bb(f)(1) of the statute, Congress has declined to confer jurisdiction on the federal courts, and, accordingly, the complete preemption doctrine does not apply.

Broken down into its component parts, SLUSA obligates the removing party to prove that: 1) the class action sought to be removed is a "covered class action," 2) the class action complaint is based on state law claims. 3) there has been a purchase or sale of a "covered security," and 4) in connection with that purchase or sale, plaintiffs allege that defendants either "misrepresented or omitted a material fact" *or* "used or employed any manipulative or deceptive device or other contrivance."

Factors one, two, and three are not contested by the parties.

First, there is no dispute that plaintiffs' lawsuit falls within the statute's definition of a covered class action. Covered class actions are defined as:

(i) any single lawsuit in which –

(I) damages are sought on behalf of more that 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individual reliance on an alleged misstatement or omission, predominate over any questions affecting only individual person or members; or

(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or

(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which -

(I) damages are sought on behalf of more than 50 persons; and

(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

*Id.* at § 78bb(f)(5)(B)(i)-(ii). Here, the class action complaint satisfies these requirements (Doc. 1 at Ex. 1 ¶¶ 6–13), which roughly track Rule 23 of the Federal Rules of Civil Procedure. There is no dispute about the fact that Mr. Pickett liquidated the accounts of more than 50 customers. Thus, plaintiffs' class action is a "covered class action."

Second, plaintiffs allege ordinary, state law claims. Prior to passage of SLUSA, these claims would have been insufficient to create federal-question jurisdiction and, by extension, provide a basis for removal. Indeed, plaintiffs expressly assert their claims pursuant to the laws of New York and/or Ohio, depending on the validity accorded to a New York choice of law provision in their brokerage contracts. Plaintiffs do not advance any federal cause of action.

Third, at least some of the securities liquidated by Mr. Pickett appear to have been covered securities. Covered securities are defined by SLUSA as:

[A] security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 77r(b) of this title, at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive device occurred. . . .

15 U.S.C. § 78bb(f)(5)(E). Section 77r(b), in turn, provides that a covered security is one that either 1) is "listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National Market System of the Nasdaq Stock Market (or any successor to such entities)," or 2) "is issued by an investment company that is registered, or that has filed a registration statement under the Investment Company Act of 1940." In an affidavit submitted by Prudential, Lois Kallet, a paralegal who scrutinized plaintiffs' accounts, swore that among the assets liquidated by Mr. Pickett were numerous mutual funds managed by registered investment companies. (Doc. 6 at Ex. A). Mr. Pickett offered documentation confirming that the investment companies at issue were registered under the Investment Company Act of 1940. (Doc. 15 at Ex. B). Plaintiffs do not oppose these contentions.

Thus, this dispute boils down to resolution of the fourth factor: whether plaintiffs have alleged that defendants either "misrepresented or omitted a material fact" or "used or employed any manipulative or deceptive device or other contrivance" in connection with liquidation of plaintiffs' accounts.

## II. Misrepresented or Omitted Material Facts and Use of Manipulative or Deceptive Devices or Other Contrivances

■ Because SLUSA was enacted just two years ago, there is little federal case law construing the meaning of the phrases "misrepresented or omitted material fact" and "use of manipulative or deceptive device or other contrivance" as expressed in § 78bb(f)(1). This language does, however, have special significance in the area of securities law. Section 10(b) of the Securities Act, codified at 15 U.S.C. § 78j, bars the use of "any manipulative or deceptive device or contrivance" in connection with the purchase or sale of any security, a prohibition that mirrors § 78bb(f)(1)(B). Pursuant to § 10(b), the Securities and

Exchange Commission promulgated Rule 10b–5, the chief private remedy for fraud. 2 Hazen, The Law Of Securities Regulation § 13.2 (3rd ed.1995). Rule 10b–5 includes a subsection that is substantially the same as § 78bb(f)(1)(A): "It shall be unlawful for any person . . . [t]o make any untrue statement of material fact or to omit to state a material fact . . . in connection with the purchase or sale of any security." *See* 17 C.F.R. § 240.10b–5. Given these resemblances, the considerable body of § 10(b) and Rule 10b–5 jurisprudence offers guidance in construing § 78bb(f)(1). *Abada,* 68 F.Supp.2d at 1166 (looking to § 10(b) and Rule 10b–5 to interpret § 78bb(f)(1)).

■ To prevail on a claim of securities fraud under § 10(b) or Rule 10b–5, the plaintiff has the burden of establishing 1) a material misrepresentation or omission, 2) made with scienter, 3) on which plaintiff reasonably relied, and 4) which proximately caused plaintiff's injury. *In Re Comshare Inc. Securities Litigation,* 183 F.3d 542, 548 (6th Cir.1999). The Supreme Court has held that "scienter" is a "mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The scienter requirement comports with the Securities Act's objective of proscribing only "knowing or intentional misconduct." *Id.* at 193, 96 S.Ct. 1375.

Whenever fraud is alleged, the pleading requirements set forth by Rule 9(b) of the Federal Rules of Civil Procedure must be satisfied with regard to scienter. *In Re Comshare,* 183 F.3d at 548. Rule 9(b) requires that a plaintiff state with particularity the "circumstances constituting fraud" to survive a motion to dismiss. *Id.* In the context of securities fraud, Rule 9(d)'s strict standard has been heightened further by PSLRA: Congress now requires that allegations of fraud under the Securities Act be pled with enough specificity so as to give rise to "a strong inference that the defendant acted with the required state of mind":

In any private action arising under this chapter in which the plaintiff may recover money damages on proof that the defendant acted with a particular state of mind, *the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.*

15 U.S.C. § 78u–4(b)(2) (emphasis added) (codifying the new scienter burden under PSLRA). Merely pleading facts establishing that "a defendant had the motive and opportunity to commit securities fraud" does not establish scienter under the Securities Act. *In Re Comshare,* 183 F.3d at 549.

Here, plaintiffs allege that Mr. Pickett "intentionally, knowingly and/or recklessly sold [p]laintiffs' investments without [p]laintiffs' consent, knowledge or authorization." (Doc. 1 at Ex.1 ¶ 33). Plaintiffs further allege that defendants' conduct was "wanton, willful, reckless and flagrant." (*Id.* at ¶ 38). In defendants' view, these general allegations establish scienter. I disagree.

Numerous courts have considered whether unauthorized trading amounts to securities fraud. Almost uniformly, these courts have held that unauthorized trading is not enough, by itself, to state a claim against a broker. For unauthorized trading to constitute a violation of the Securities Act, there must be specific proof that the unauthorized trading was part of a larger scheme to defraud. *See, e.g., Messer v. E.F. Hutton & Co.,* 833 F.2d 909, 916–17 (11th Cir.1987) ("[A]n unauthorized trade does not violate the antifraud provisions of the Securities Exchange Act unless it is accompanied by an intent to defraud. . . ."); *Shamsi v. Dean Witter Reynolds, Inc.,* 743 F.Supp. 87, 91 (D.Mass.1989) ("While a broker's executing transactions contrary to a customer's instructions or best interests may constitute breach of contract or fiduciary duty, such conduct is not deceptive within the meaning of Section 10(b) and Rule 10b–5."); *Kayne v. PaineWebber Inc.,* 703 F.Supp.

1334, 1340 (N.D.Ill.1989) ("[U]nauthorized trading alone—that is, the mere failure to disclose that unauthorized trades are being made—does not amount to securities fraud."); *Baker v. Wheat First Securities,* 643 F.Supp. 1420, 1432 (S.D.W.V.1986) ("[U]nauthorized trading in an account will not alone make out a case under Rule 10b–5."); *Bischoff v. G.K. Scott & Co., Inc.,* 687 F.Supp. 746, 750 (E.D.N.Y.1986) ("Unauthorized trades, . . . without more, do not constitute a 10b–5 violation.").

For example, in *Pross v. Baird, Patrick & Co.,* 585 F.Supp. 1456, 1460 (S.D.N.Y. 1984), the plaintiff, Pross, sued his broker, alleging that securities were sold from his account without his consent. Dismissing the claim of securities fraud, the district court held that there had to be some additional "element of deception" before unauthorized trading could be the basis of a claim under the Securities Act:

> Plaintiff's complaint is reduced to a claim that Baird made trades on his behalf which were contrary to his express instructions and in derogation of the parties' brokerage agreement. . . . While the conduct Baird allegedly engaged in was reprehensible, it does not involve the element of deception necessary to be violative of Rule 10b–5. At most, it provides the basis for a claim of breach of fiduciary duty or breach of contract, which, without more, cannot be converted into a fraud claim under § 10(b) and Rule 10b–5.

*Id.*

*Pross* is analogous to this case. Plaintiffs have not alleged facts suggesting that Mr. Pickett's conduct involved any "element of deception." Notably, plaintiffs have not alleged that Mr. Pickett had any-

thing to gain financially, that he was churning plaintiffs' accounts, or that he intended to benefit by contravening the terms of the brokerage contracts. *Cf. Mihara v. Dean Witter & Co., Inc.,* 619 F.2d 814, 821 (9th Cir.1980) (recognizing that churning an account to increase commissions violates the Securities Act). Plaintiffs have not alleged that Mr. Pickett promised to repurchase account assets, but then failed to do so. *Cf. Kayne,* 703 F.Supp. at 1336 (holding that a securities fraud claim was properly pled where a broker falsely assured his client that he would cancel unauthorized trades). Plaintiffs have not alleged that Mr. Pickett concealed his activities by omitting the unauthorized trades from monthly statements mailed to clients. *Cf. Village of Arlington Heights v. Poder,* 712 F.Supp. 680, 683 (N.D.Ill.1989) (finding that failure to inform an investor that unauthorized purchases and sales were being made from its account was actionable under the Securities Act) (citations omitted). And plaintiffs have not alleged that Mr. Pickett continued unauthorized trading after being told to stop. *Cf. Jellison, et al. v. Buys–MacGregor–MacNaugton–Greenawalt & Co.,* 1988 WL 108287, at * 2 (W.D.Mich. April 29, 1988) (concluding that a broker who disobeyed his client's specific instructions to stop unauthorized trading was potentially liable for securities fraud).

In short, this case involves an allegation of one instance of unauthorized trading. While this may sustain conversion, breach of contract, breach of fiduciary duty, or negligence claims, it does not suggest, much less strongly so as is mandated by PSLRA, that Mr. Pickett meant to defraud plaintiffs by liquidating their accounts.[2]

---

**2.** Courts have consistently declined to find violations of the Securities Act based on allegations of conversion, breach of contract, breach of fiduciary duty, and negligence. *See, e.g., Pross v. Katz,* 784 F.2d 455, 458 (2d Cir.1986) ("It is clear that a breach of a fiduciary duty by itself is not sufficient to make out a federal claim" under the Securities Act); *Richter v. Achs,* 962 F.Supp. 31, 32–33 (S.D.N.Y.1997) ("[A]llegations of a mere breach of contract or breach of fiduciary

duty, without more, do not create a claim under Section 10(b) or Rule 10b–5."); *Panos v. Island Gem Enter., Ltd., et al.,* 880 F.Supp. 169, 179 (S.D.N.Y.1995) ("[B]reach of contractual obligations or fiduciary responsibilities . . . is not proscribed by § 10(b)'s language"); *Rubinberg v. Hydronic Fabrications, Inc.,* 775 F.Supp. 56, 63–64 (E.D.N.Y.1991) ("[I]t is well settled that a breach of contract alone does not give rise to liability under the

Only additional "facts giving rise to a strong inference" that Mr. Pickett acted with intent to defraud could support a tenable securities fraud claim. 15 U.S.C. § 78u–4(b)(2). Plaintiffs have not pled such additional facts.

■ Defendants counter by citing the allegation of recklessness in plaintiffs' complaint. According to defendants, the mere charge of "unauthorized trading, *coupled with some sort of scienter, such as recklessness*, [is] sufficient to constitute federal securities claims, thereby triggering the preemptive effect of SLUSA." (Doc. 38 at 4) (emphasis in original). Defendants argue that the complaint is "actionable under the federal securities law" because it "alleges both unauthorized trading plus scienter (recklessness)." (*Id.*).

Prior to passage of PSLRA, an allegation of simple "recklessness" could satisfy "the § 10(b)/Rule 10b–5 scienter requirement." *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1024 (6th Cir.1979). The definition of the term recklessness fell "somewhere between intent and negligence":

> [R]ecklessness [is] highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it.

*Mansbach*, 598 F.2d at 1024–25 (citing *Sundstrand Corp. v. Sun Chem. Corp.* 553 F.2d 1033, 1045 (7th Cir.1977)).

In PSLRA's aftermath, "recklessness, understood as a metal state apart from negligence and akin to conscious disregard," has continued to be an indicator of scienter. *In Re Comshare*, 183 F.3d at 550. But PSLRA changed the way in which recklessness is required to be pled. Now, a bald allegation of recklessness must be accompanied by facts "that give rise to a 'strong inference' of recklessness." *Id. See also Greebel v. FTP Software, Inc.*, 194 F.3d 185, 192 n. 6 (1st Cir.1999) ("[A]llegations of simple recklessness" no longer "satisfy the scienter requirement" with the passage of PSLRA); *In Re Silicon Graphics, Inc. Securities Litigation*, 183 F.3d 970, 979 (9th Cir.1999) ("[P]laintiffs proceeding under … PSLRA can no longer aver intent in general terms of mere 'motive and opportunity' or 'recklessness,' but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent."); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1283 (11th Cir.1999) (adopting Sixth Circuit's interpretation of the scienter burden under PSLRA).

Accordingly, conclusory allegations of recklessness, intention, or misconduct do not transform unauthorized trading into a fraudulent scheme or indicate an "element of deception." Under PSLRA, plaintiffs must identify specific facts that give rise to a strong inference that Mr. Pickett acted recklessly. *In Re Comshare*, 183 F.3d at 550.[3] Such specific facts are absent from

---

federal securities laws.") (citations omitted); *Bochicchio v. Smith Barney, Harris Upham & Co., Inc.*, 647 F.Supp. 1426, 1430 (S.D.N.Y. 1986) ("[T]he conversion of securities, even if it occurs from a brokerage account, does not state a claim under § 10(b)."); *Baum v. Phillips, Appel & Walden, Inc.*, 648 F.Supp. 1518, 1535 (S.D.N.Y.1986) ("After careful review of the record, the Court finds that the allegations contained in the first three Counts may be characterized as 'unauthorized trading' claims. Such allegations amount to no more than breach of contract or fiduciary duty."); *Kirkland v. E.F. Hutton & Co.*, 564 F.Supp. 427, 441 (E.D.Mich.1983) ("[B]reach of contract does not automatically result in a violation of the antifraud provisions of the federal securities laws.").

**3.** *See also Brophy v. Redivo*, 725 F.2d 1218, 1221 (9th Cir.1984) ("The mere fact that defendant … must have acted intentionally— i.e., consciously—while making the unauthorized trades is not sufficient to show scienter."); *Rocco v. Painewebber, Inc.*, 739 F.Supp. 83, 85 (D.Conn.1990) ("While 9(d) allows intent and knowledge to be averred generally, plaintiffs are not relieved of 'their burden of pleading circumstances that provide at least a minimal factual basis for the conclusory allegations of scienter.' ") (citations omitted); *Rowe v. Morgan Stanley Dean Witter*, 191 F.R.D. 398, 413–14 (D.N.J.1999) ("The fact a broker acted 'intentionally' or 'consciously,' however, may not be sufficient to show scienter. Rather, a plaintiff must allege facts showing an intent to defraud.").

plaintiffs' complaint, and thus defendants' recklessness argument is of no avail.

Defendants' reliance on the old pleading standard set forth in *Mansbach* ignores the fact that Congress in effect trumped *Mansbach* when it enacted PSLRA. This was addressed at length by the Sixth Circuit in *In Re Comshare,* which defendants fail to discuss.

The other cases cited by defendants also are inapposite. The facts of *Abada v. Charles Schwab & Co., Inc.,* 68 F.Supp.2d 1160 (S.D.Ca.1999), on which defendants lean heavily, differ from those presented here. *Abada* involved allegations that Charles Schwab falsely advertised that trades made online, through its website, could be executed immediately. In reality, trades can take time to process, depending on overall volume of trading, computer server traffic, and the physical time it takes to communicate an order to a trader on the market floor. Because prices sometimes fluctuate during this delay, a client might be charged a higher price than the price at the moment his order was submitted. The plaintiffs in *Abada* claimed that Charles Schwab knew that such delays were likely to occur, yet deceitfully advertised that trading happened instantaneously. Given the plaintiffs' specific, factual allegations of deceitful conduct, the court in *Abada* determined that the § 78bb(f)(1) criteria of SLUSA had been triggered, mandating removal and dismissal.

In this case, however, plaintiffs have not alleged specific facts giving rise to a strong inference that Mr. Pickett acted deceitfully. At most, they allege unauthorized trading, which, without more, cannot sustain a claim of securities fraud. False advertising is not at issue. Thus, *Abada* is easily distinguishable.

In sum, plaintiffs' allegations do not satisfy the scienter requirement for securities fraud under § 10(b) and Rule 10b–5. Because § 10(b) and Rule 10b–5 are nearly identical to the removal criteria set forth at § 78bb(f)(1) of SLUSA, it follows that removal is improper, and remand to state court is the appropriate course.

## CONCLUSION

It is, therefore, ORDERED THAT

Defendants' motions to dismiss are denied and plaintiffs' motion for remand is granted.

So ordered.