Jerome FEITELBERG, On Behalf of Himself, All Others Similarly Situated, and The General Public, Plaintiff,

v.

MERRILL LYNCH & CO., INC., a Delaware Corporation, Thomas Mazzucco, Henry Blodget, and Does 1–30, Defendants.

No. C 02–3072 MHP.

United States District Court, N.D. California.

Oct. 9, 2002.

---

C. Andrew Dirksen, Gwendolyn R. Giblin, Solomon B. Cera, Gold Bennett Cera & Sidener LLP, San Francisco, CA, for Plaintiff.

Jonathan C. Dickey, Gibson, Dunn & Crutcher LLP, Palo Alto, CA, for Defendants.

## MEMORANDUM AND ORDER

PATEL, Chief Judge.

Jerome Feitelberg brought this class action in state court against Merrill Lynch & Co., Thomas Mazzucco, Henry Blodget, and Does 1–30 on behalf of himself and all others resident in the State of California who are similarly situated. Plaintiff brings this motion to remand pursuant to 28 U.S.C. sections 1441 and 1447 on the grounds that this court lacks subject matter jurisdiction. Plaintiff alleges that this court does not have jurisdiction regarding his single claim under section 17200 *et seq.* of the California Business & Professional Code. Defendant removed this action to federal court based on the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). 15 U.S.C. § 77p, 78bb(f). Now before the court is plaintiff's motion to remand the action to state court. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court now enters the following memorandum and order.

## BACKGROUND

This action is one in a series of cases filed in the wake of Merrill Lynch's announcement in May 2002 of a tentative settlement with the Attorney General of the State of New York. Following the investigation by the New York Attorney

General regarding alleged misconduct on the part of Merrill Lynch analysts, a well-publicized tentative settlement was announced. Merrill Lynch admitted no wrongdoing but agreed, among other things, to pay a total of $100 million to implement policies establishing a new industry standard for independent and objective research. Compl. ¶¶ 21 & 28.

Plaintiff alleges that defendants engaged in unfair business practices, deceived the public, and should be required to disgorge profits acquired from their unlawful conduct under California state law. Specifically, plaintiff alleges that the dissemination by Merrill Lynch of "unfair and deceptive ratings and/or research reports resulted from defendants' failure to adequately separate Merrill Lynch's investment banking operations and the stock analysis functions performed by its Internet Group." Compl. ¶ 38. Plaintiff relies on evidence uncovered by the Attorney General of the State of New York where some analysts' ("Internet Group") internal comments sharply contrasted with the publicly announced ratings. Compl. ¶ 21.

On June 7, 2002, plaintiff filed a complaint on behalf of himself and the general public of California in the Superior Court for the County of San Francisco. Plaintiff's complaint asserts a single claim alleging that defendants issued deceptive purchase-and-sale advice in the form of stock ratings and analyst research reports for a group of publicly traded internet stocks that were purchased by plaintiff and the general public. Compl. ¶¶ 3, 6, 18, 19, 22, 24, 26, 33, 36 & 38. The complaint is based on sections 17200 *et seq.* of the California Business & Professions Code, California's Unfair Competition Act ("UCL"). Cal. Bus. & Prof.Code §§ 17200–09. On June 26, 2002, defendants removed this action from state court based on federal preemption under SLUSA.

Plaintiff subsequently filed a motion to remand on July 26, 2002. In response, defendants filed a motion to dismiss, or in the alternative, to stay proceedings on August 1, 2002. Both motions were noticed for hearing on September 30, 2002.

On August 5, 2002, this court issued a related case order finding the instant case related to *Cereghino v. Merrill Lynch & Co.* and reassigning the action to this court. Plaintiff then filed an amended notice of motion and motion to remand on August 14, 2002 which re-noticed the motion for hearing in this court on September 30, 2002. The court held the motion to dismiss in abeyance pending resolution of the motion to remand.

*LEGAL STANDARD*

A court will remand a removed case "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule." The rule provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). As such, a case can generally not be removed to federal court on the basis of a federal defense, including the defense of preemption, unless the preemptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim." *Caterpillar,* 482 U.S. 386, 392–93, 107 S.Ct. 2425, 96 L.Ed.2d 318 (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).

Defendants removed this action on the grounds that it is preempted by SLUSA. At issue for the purposes of deciding the pending motion is whether plaintiff's class

action is preempted by federal securities law.

*DISCUSSION*

Plaintiff makes three arguments to support his contention that his action is not a "covered class action" under SLUSA. First, plaintiff argues that a prayer for damages is a prerequisite for a claim to be considered a "covered class action." Plaintiff alleges that his action is not a "covered class action" as his claim for monetary relief is in the form of "disgorgement" and "restitution" rather than damages. Next, plaintiff alleges that SLUSA's language requiring "misrepresentations or omissions of material facts" and "manipulative or deceptive device or contrivance" has been interpreted to imply a scienter requirement and therefore removal under SLUSA is dependent on whether or not scienter had properly been pled in the complaint. Plaintiff argues that because he never explicitly or implicitly alleges scienter in his complaint, his state-law claim cannot be preempted by SLUSA. Finally, plaintiff argues that this action is not subject to removal under SLUSA because the alleged wrongdoing on defendants' part is not "in connection with" the purchase or sale of securities as required by SLUSA.

SLUSA provides that "[a]ny covered class action brought in any state court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b)." 15 U.S.C. § 78bb(f)(2). SLUSA expressly preempts such state-law claims by providing the following:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

SLUSA is the most recent in a line of federal securities statutes originating with Congress's passage of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77a *et seq.*, and the Securities Act of 1934 ("1934 Act"), 15 U.S.C. § 78a *et seq.* In 1995, Congress passed the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 77z–1, 78u, which applies to federal securities fraud claims and sets forth rigorous pleading requirements designed to test the legal sufficiency of a complaint.[1] In enacting PSLRA, Congress sought to protect issuers from shareholder suits initiated for the sole purpose of winning large attorney fees or private settlements. *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 973 (1999).

In response, class action attorneys increasingly filed lawsuits in state court and under state law in order to circumvent the requirements of PSLRA. In California, for example, the number of securities case filings increased five-fold in the wake of PSLRA's passage. H.R. Conf. Rep. No. 105–803, at 15 (1998).

Congress responded by enacting SLUSA with the intent of making federal courts the primary venue for class action securities claims. *Id.* at 14–15.

---

**1.** Among other things, PSLRA established heightened pleading requirements, an automatic stay of discovery pending motions to dismiss, and a safe harbor for certain forward-looking statements. 15 U.S.C. §§ 78u–4, 77z–1.

### A) *Covered Class Action*

█ Plaintiff argues that this is not a "covered class action" under SLUSA. Specifically, he argues that a prayer for damages is a prerequisite for a claim to be considered a "covered class action," and his complaint does not seek damages. Instead, he seeks "restitution, disgorgement of defendants' illegally obtained profits and injunctive relief to stop defendants' improper conduct." Compl. ¶¶ 3 & 39. Defendants argue that plaintiff's prayer for monetary relief equates to "damages" under SLUSA and suggest that plaintiff's omission of the term "damages" from his complaint is, in fact, an attempt to plead around SLUSA.

SLUSA defines the term "covered class action" as follows:

The term "covered class action" means—

(i) any single lawsuit in which—

(I) *damages* are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

(II) one or more named parties seek to recover *damages* on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members.

15 U.S.C. § 77bb(f)(5)(B) (emphasis added). Plaintiff's claim for monetary relief is based on sections 17200 *et seq.* of the California UCL, which excludes damages as a form of relief.[2] The question before the court, then, is whether the word "damages" as used in SLUSA may include the elements of "restitution, disgorgement of illegally obtained profits and injunctive relief" referred to in the UCL. The word "damages" is not defined in SLUSA. Accordingly, the court must look to the case law and the legislative history of the statute in order to deduce the meaning of the term "damages" under SLUSA.

█ To avoid circumvention of PSLRA, the structure and legislative history of SLUSA suggest that district courts should construe the "covered class action" definition broadly to avoid attempts at manipulation. The Senate Banking Committee Report, for example, explains: "[W]hile the Committee believes that it has effectively reached those actions that could be used to circumvent reforms enacted by Congress in 1995 as part of the Private Securities Litigation Reform Act, it remains the Committee's intent that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition." S.Rep. No. 105–182, at *8 (1998), *reprinted in* 1998 WL 226714 (Leg.Hist.). Federal district courts have followed the Senate Banking Committee Report and interpreted SLUSA's definition of "covered class action" broadly. *See, e.g., Bertram v. Terayon Communications Sys.,* 2001 WL 514358, at *7

---

**2.** Section 17203 of the UCL states that "the court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof.Code.

(C.D.Cal. Mar. 27, 2001) (holding that a complaint seeking restitution and other equitable relief could be considered a covered class action); *Gibson v. PS Group Holdings,* 2000 WL 777818, at *4 (S.D.Cal. June 14, 2000) (holding that an amended complaint seeking only equitable relief and not damages could nevertheless be considered a "covered class action"); *Patenaude v. Equitable Life Assurance Soc'y of United States,* No. 00–1473, slip. op. at 7 (S.D.Cal. Oct. 11, 2000), *aff'd,* 290 F.3d 1020 (9th Cir.2002) (finding that disgorgement and restitution are damages for the purposes of SLUSA and that plaintiff's argument to the contrary "defies common sense"). Federal district courts have also recognized that Congress's intent behind the broad interpretation of "covered class action" is to prevent plaintiffs from seeking to evade the protection that federal law provides against abusive litigation by filing suit in state court rather than federal court. *Haney v. Pacific Telesis Group,* 2000 WL 33400194 at * 19 (C.D.Cal. Sept. 14, 2000); *see also Bertram,* 2001 WL 514358, at *3–4 (holding that plaintiff's claim for restitution falls within the definition of damages under SLUSA and reasoning that "Congress did not intend to allow artful pleading to circumvent its protections" when it defined covered class action under SLUSA); *Gibson,* 2000 WL 777818, at *4 (reasoning that a rule "that allows a plaintiff to defeat a defendant's right to remove a class action through such a hollow procedural maneuver would surrender the Uniform Standards Act's [SLUSA's] application to the class action plaintiffs the statute seeks to keep at bay"); *cf. Wald v. CM Life Ins.,* 2001 WL 256179, at *6 (N.D.Tex. Mar. 8, 2001) (holding that when plaintiff seeks only declaratory and injunctive relief, there is simply no indication that the plaintiff is trying to manipulate the system and the underlying action is not a covered class action under SLUSA).

To effectuate SLUSA's purpose of protecting issuers from class action plaintiffs seeking to evade federal securities law, SLUSA requires that the court look beyond the face of plaintiff's pleadings to discern whether this action is a "covered class action." In the case at bar, plaintiff clearly seeks monetary relief in the form of "disgorgement" and "restitution" but provides no persuasive authority for his argument that "disgorgement of profits" and "restitution" are not considered damages under section 78bb(f)(5). In support of his claim, plaintiff points to several California cases that have held that monetary remedies sought under the UCL do not constitute damages. However, these authorities neither address securities fraud claims nor confront the scope of the term "damages" under SLUSA. *Coast Plaza Doctors Hosp. v. Blue Cross of California,* 83 Cal.App.4th 677, 99 Cal.Rptr.2d 809 (2000) (considering whether a claim for injunctive relief under the UCL, which was not subject to arbitration, precluded arbitration of other monetary damage claims subject to the arbitration clause); *Cortez v. Purolator Air Filtration Prods. Comp.,* 23 Cal.4th 163, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000) (considering whether an order that earned wages be paid is an order for payment of damages or a restitutionary remedy authorized by the UCL); *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992) (considering whether the restitutionary UCL award for advertising injury due to unfair competition was a form of damages covered by a bank's comprehensive general liability insurance policy). Moreover, how the state of California defines damages is irrelevant under SLUSA. The mere fact that plaintiff has found California jurisprudence holding that damages do not equate to restitution does not mean that "damages" under SLUSA, a federal

law, excludes claims for restitution. In fact, this Circuit has described the type of damages permissible under a federal securities fraud claim as including "out-of-pocket losses, rescissionary damages, or *restitutionary damages.*" *DCD Program. Ltd. v. Leighton,* 90 F.3d 1442, 1449 (9th Cir.1995) (emphasis added).

It should be noted that plaintiff argues that he has no intention of procedural maneuvering. Specifically, he states that he has no intention of adding any claims and that he would in effect be estopped from doing so because he has repeatedly represented that he will not pursue damages. Plaintiff relies on a district court case, which held that when there is simply no indication that the plaintiff is trying to manipulate the system and plaintiff seeks only declaratory and injunctive relief, the underlying action is not a covered class action under SLUSA. *Wald,* 2001 WL 256179, at *6. Defendants, however, correctly point out that *Wald* is inapposite as plaintiffs in *Wald* sought only declaratory relief and an injunction—not disgorgement or restitution.

In this case, plaintiff repeatedly alleges that he seeks restitution and disgorgement. His prayer for relief specifically asks for "restitution and a disgorgement order." Compl. at p. 14 ¶ B. Although plaintiffs may have not overtly tried to circumvent SLUSA, the higher pleading standard established by PSLRA makes it appealing to do so. The legislative history of SLUSA clearly suggests that the statute was enacted to deal with the temptation class action plaintiffs have to plead around SLUSA; thus, the statute should be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition. In light of the policy and the legislative history behind SLUSA suggesting that the act should be interpreted

broadly the court finds that the class action in this case is a "covered class action."

## B) *Scienter Requirement*

█ Plaintiff argues that this claim does not fall under SLUSA because he did not allege scienter. According to plaintiff, federal jurisdiction under SLUSA exists only when a plaintiff satisfies the pleading standards of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Scienter is an essential element of a claim under section 10(b) and Rule 10b-5. Plaintiff suggests that because scienter is not alleged anywhere in the pleadings, SLUSA does not apply to this action. Defendants respond that the plain language of SLUSA does not require an actual allegation of scienter and that the court should decline to impose such a requirement. In the alternative, defendants claim that even if allegations of scienter were required, the action would still properly be removable because plaintiff has alleged that defendant's research reports were deceptive.

Plaintiff relies on a line of cases that stand for the proposition that the presence or absence of scienter in a state law securities claim is a determinative factor in establishing whether a pleaded state law claim is a mere substitute for the federal securities law and, therefore, whether it is barred by SLUSA. Plaintiff points to several opinions that have imported into SLUSA a section 10(b) and Rule 10b-5 requirement of scienter. The common rationale for importing the 10(b) requirement of scienter is that SLUSA's language parallels that of section 10(b) and Rule 10b-5, which make it unlawful "[t]o make any untrue statement of material fact or to omit to state a material fact ... in connection with the purchase or sale of any security." [3] However, neither section 10(b) nor

---

**3.** *See Simon v. Internet Wire, Inc.,* 2001 WL 688542, at *2 (C.D.Cal. April 3, 2001) ("Be-

Rule 10b–5 use the actual term scienter; nor do the pertinent provisions of SLUSA. Scienter and the definition of scienter are creations of case law interpreting section 10(b) and Rule 10b–5. Since SLUSA amends the 1934 Act and uses the same language as section 10(b) it is appropriate to look at the allegations and whether they support scienter.[4]

In *Ernst & Ernst v. Hochfelder*, the Court clarified the state of mind or scienter requirement for actions pursuant to section 10b–5. 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The court noted that

> "[t]he words 'manipulative or deceptive,' when used in conjunction with 'device or contrivance,' strongly suggest that [section] 10(b) was intended to proscribe knowing or intentional misconduct ... Use of the word 'manipulative' is especially significant. It is and was virtually a term of art when used in connection with securities markets. It connotes intentional conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities."

*Id.* at 197–99, 96 S.Ct. 1375. With the enactment of the PSLRA, Congress increased the standard for pleading scienter by requiring a plaintiff to plead "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). Nowhere in PSLRA is "required state of mind" defined, and there is disagreement among the courts as to the

proper interpretation of the PSLRA's heightened pleading requirement. As with the PSLRA, Congress in enacting SLUSA stated its intent that the Second Circuit standard be adopted. S.Rep. No. 105–182, at *6 (1998), (*reprinted in* 1998 WL 226714 (Leg.Hist.)). This Circuit has expanded on this interpretation in *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir.1999), holding that "a private securities plaintiff proceeding under the PSLRA must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *Id.* at 974. In support of this rule, the court added that "mere recklessness or facts demonstrating motive or opportunity to commit fraud may provide some reasonable inference of intent, [but] they are not sufficient to establish a strong inference of deliberate recklessness." *Id.* In determining whether a complaint satisfies PSLRA's pleading standard, the court must make two separate determinations. First, what constitutes the required state of mind, and second, what constitutes a strong inference of that state of mind. *Id.* at 975. The requisite state of mind is "some degree of intentional or conscious misconduct." *Id.* (citing *Hochfelder*, 425 U.S. at 194, 196–97, 96 S.Ct. 1375). To satisfy the second essential element of PSLRA, a plaintiff "must plead in great detail facts demonstrating, at minimum a degree of recklessness that strongly suggest actual intent." *Id.* at 985.

cause case law interpreting SLUSA is limited, courts have looked to Section 10(b) of·the Securities Exchange Act of 1934 to interpret SLUSA"); *Green v. Ameritrade Inc.*, 120 F.Supp.2d 795, 798 (D.Neb.2000) (Because of the similarity between SLUSA's language and Section 10(b) and 10b–5 "courts have looked to Section 10(b) and Rule 10b–5 in construing SLUSA"); *Burns v. Prudential Securities*, 116 F.Supp.2d 917, 923 (N.D.Ohio 2000) ("Given these resemblances [between Rule 10b–5 and

§ 78bb(f)(1) ], the considerable body of § 10(b) and Rule 10b–5 jurisprudence offers guidance in construing § 78bb(f)(1).").

4. Since SLUSA also amends sections 11 and 12(a)(2) of the 1933 Act, as to those claims SLUSA does not require scienter. *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1346 (11th Cir.2002).

Plaintiff then argues that if the state law claims do not require the pleading of scienter the action must be remanded, citing *Burns v. Prudential Sec.*, 116 F.Supp.2d 917, 923 (N.D.Ohio 2000), and *Green v. Ameritrade Inc.*, 279 F.3d 590, 599 (8th Cir.2002). This argument proves too much, for if by merely omitting scienter allegations plaintiff can avoid SLUSA's preemption effect, SLUSA would be totally eviscerated. If in fact the claims allege misrepresentations or omissions or use of manipulative or deceptive devices in connection with the purchase or sale of securities and otherwise come within the purview of SLUSA, artful avoidance of those terms or scienter language will not save them from preemption. In other words, if it looks like a securities fraud claim, sounds like a securities fraud claim and acts like a securities fraud claim, it is a securities fraud claim, no matter how you dress it up.

In the case at bar, however, we have even more than the mere avoidance of some of the magic language. Plaintiff, in fact, makes allegations that smack of scienter. For example, plaintiff alleges that defendants issued favorable research reports and ratings for stocks of companies for which defendants also provided investment banking services "while publicly representing that its analysts were not influenced by the company's investment banking division." Compl. ¶ 2. The complaint is ridden with suggestions of intentional conduct designed to defraud investors by artificially affecting the price of securities. *See, e.g.,* compl. ¶¶ 2, 6, 19, 21, 23 & 25. The complaint explicitly explains that research reports have an impact on the market price of the stocks that they cover. Compl. ¶ 12.

In short, plaintiff alleges that defendants have engaged in unfair, unlawful or deceptive conduct. The result of such conduct was dissemination by defendants of unfair and/or deceptive ratings and research reports from which defendants allegedly made substantial profits. Compl. ¶ 38. Plaintiff's allegations are sufficient to meet the *Hochfelder* standard for scienter. Consequently, plaintiff's complaint contains sufficient inferences of behavior to fall within the realm of a "misrepresentation or omission of material fact" or "manipulative or deceptive device or contrivance" under SLUSA.

### C) *In Connection With the Purchase or Sale of Securities*

Plaintiff argues that the focus of his complaint is on the company's internal operations and not the purchase or sale of stock by shareholders. Accordingly, plaintiff suggests that the alleged wrongdoing committed by defendants is not "in connection with the purchase or sale of securities" and does not implicate SLUSA. Defendants argue that plaintiff cannot "divorce the alleged cause of misrepresentation (i.e. Defendant's 'internal operations') from the subject matter of the alleged misrepresentations—the securities at issue and the alleged harm to plaintiff and the putative class caused by such misstatements." Def. Opp. ¶ 13:3–6.

SLUSA permits the removal of "covered class actions" based on state law in which plaintiffs allege a misrepresentation or manipulative or deceptive device or contrivance *in connection with* the purchase or sale of a covered security. 15 U.S.C. § 78bb(f)(2) (emphasis added). SLUSA does not define "in connection with" and few courts have interpreted this language. As a result, courts have consistently relied upon section 10(b) case law in interpreting 78bb(f)(2); thus using the same approach in defining "in connection with" as they have in defining "misrepresentation" or "manipulative or deceptive device or con-

trivance."[5] Therefore, it is appropriate to look to section 10(b)'s language and its subsequent interpretation in ascertaining the meaning of "in connection with."

The "in connection with" element "should be construed, 'not technically and restrictively, but flexibly'" in order for section 10(b) to cover typical and novel forms of fraud. *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) (quoting *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 195, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963)). To satisfy the "in connection with" element, a party must show that a security buyer or seller suffered an injury as a result of "deceptive practices touching" its purchase or sale of securities. *Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.,* 404 U.S. 6, 12–13, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). The Supreme Court recently reaffirmed the broad reading of the language "in connection with" under section 10(b), holding that "[i]t's enough that the scheme to defraud and the sale of securities coincide." *SEC v. Zandford,* 535 U.S. 813, 122 S.Ct. 1899, 1904, 153 L.Ed.2d 1 (2002). Plaintiff can therefore no longer rely on the jurisprudence that he has submitted as it involves allegations of misfeasance that coincide with the plaintiff's purchase of securities.[6]

In the case at bar, plaintiff alleges that defendants' analysts issued unfair and/or deceptive company ratings in research reports which affected the price of the internet stocks: "Positive research reports tend to increase or maintain the price of the securities of the company reported on; negative research reports tend to lower the price of the securities of the company reported on." Compl. ¶ 12. Additionally, the complaint alleges that plaintiff and the putative class members purchased shares of the stock at issue during the class period. Compl. ¶¶ 6, 31 & 33. Moreover, plaintiff alleges that the investing public was victimized by this "unfair business practice" because people relied on what they thought was objective advice. Compl. ¶ 2. In short, plaintiff's allegations try to establish that defendants misrepresented the value of stock in order to further the interests of their investment banking division and that such misrepresentation affected the value of stock. Accordingly, it is clear that the scheme to defraud and the sale of securities coincide.[7] As such, the alleged misfeasance clearly is "in connection with" the sale of securities.[8]

---

5. *See, e.g., Shaw v. Charles Schwab & Co.,* 128 F.Supp.2d 1270, 1273–74 (C.D.Cal.2001); *Simon v. Internet Wire Inc.,* 2001 WL 688542, at *2 (C.D.Cal. Apr. 3, 2001); *Burns,* 116 F.Supp.2d at 923; *Green,* 120 F.Supp.2d at 798.

6. *See, e.g., Shaw,* 128 F.Supp.2d 1270 (claims related to the commission rate for web-based trading and the efficacy of defendant's web-based trading system); *Spielman v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 2001 WL 1182927 (S.D.N.Y. Oct. 9, 2001) (action involving misrepresentation about brokerage fees); *Roskind v. Morgan Stanley Dean Witter & Co.,* 80 Cal.App.4th 345, 95 Cal.Rptr.2d 258 (2000) (brokerage firm allegedly failed to execute orders for stock sales in a timely manner).

7. During oral arguments, plaintiff's counsel emphasized that the complaint focused more on Merrill Lynch's internal operations than on the purchase or sale of securities by shareholders, therefore the "in connection with" requirement had not been satisfied. This argument does not, however, change the allegations in the complaint stating a claim based on alleged misstatements about specific stocks purchased by the plaintiff and the putative class. Accordingly, the alleged misrepresentations are "in connection with" the purchase or sale of securities, and SLUSA permits removal.

8. Plaintiff's counsel, during oral arguments, also raised the fact that Merrill Lynch was not an issuer of the stock which was the subject of the alleged misrepresentations. Specifically,

## CONCLUSION

For the foregoing reasons, the court DENIES plaintiff's motion to remand and DISMISSES the complaint. Consequently, the court DENIES plaintiff's request that defendants pay plaintiff's attorneys' fees and costs incurred in connection with challenging removal of this action.

The Ninth Circuit has held that claims can be asserted before a federal court when SLUSA completely preempts the state law claims.[9] Accordingly, if plaintiff wishes to reformulate his complaint, the court GRANTS plaintiff leave to amend to re-characterize the complaint under federal securities law. The amended complaint, if any, shall be filed within thirty (30) days of the date of this order.

IT IS SO ORDERED.

plaintiff stressed that legislative history suggests that the purpose behind SLUSA was to go after the issuers of securities and, in this case, defendants are not issuers. Again, the court fails to see the relevance of such an argument as there is no mention anywhere in SLUSA of a requirement that the alleged misrepresentation be made by the issuer, with respect to its own securities.

9. *Patenaude v. Equitable Life Assurance Soc'y of the United States*, 290 F.3d 1020, 1023 (9th Cir.2002) (holding that the district court has subject matter jurisdiction only if SLUSA completely preempts the state law claims that plaintiff attempted to assert).