**David WINNE, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, AXA Financial, Inc., AXA Advisors, LLC and Equitable Variable Life Insurance Company, Defendants.**

No. 03 Civ.1689(GEL).

United States District Court, S.D. New York.

Oct. 27, 2003.

---

Jeffrey S. Abraham and Lawrence D. Levit, Abraham & Associates, New York City, for Plaintiff.

Charles C. Platt, Wilmer, Cutler & Pickering, and Randall M. Fox, LeBoeuf, Lamb, Greene & MacRae, New York City, for Defendants.

## OPINION AND ORDER

LYNCH, District Judge.

Plaintiff originally brought this action in the Supreme Court of the State of New York on or about February 11, 2003, on behalf of himself and a proposed class of individuals who were allegedly charged penalty fees for early withdrawal of funds from certain annuities issued by one or more defendants (collectively, "Equitable"), after having been induced by Equitable to switch from one Equitable annuity policy to another. Plaintiff sued under three causes of action: (1) deceptive business practices in violation of § 349(a) of the N.Y. General Business Law; (2) breach of contract; and (3) unjust enrichment. Defendants removed the action to this Court on March 11, 2003, pursuant to 28 U.S.C. § 1331 and the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p, 78 bb(f), arguing that SLUSA provides for sole federal jurisdiction over these claims. Plaintiff moves to remand the case to state court on the grounds that SLUSA does not apply because (1) the annuity is not a covered security under the statute; (2) the claims are not related to the underlying value of the annuity; (3) the state-law claims do not allege scienter, and plaintiff argues that SLUSA has a scienter requirement; and (4) the claims are based on conduct that occurred prior to the enactment of the statute. Defendants oppose the motion to remand, and move to dismiss on the ground that the state-law claims are preempted by SLUSA. For the reasons that follow, plaintiff's motion to remand will be denied, and defendants' motion to dismiss will be granted.

## BACKGROUND

The following facts are drawn from plaintiff's Complaint, which must be taken as true for purposes of the motion to dismiss. This dispute concerns penalty withdrawal charges related to an annuity policy that the plaintiff established with Equitable. Plaintiff's first Equitable annuity policy was a single premium deferred annuity, defined as a fixed annuity, that commenced in 1987 when plaintiff deposited $62,000 with Equitable ("Fixed Annuity") (Compl. ¶ 17). A fixed annuity is an investment product in which the annuitant purchases from the seller (usually, as here, an insurance company) the right to receive a stream of periodic payments in the future. The Fixed Annuity had a withdrawal penalty provision requiring payment of a charge to Equitable if plaintiff withdrew a certain amount of funds from the policy. The penalty withdrawal provision expired after seven years.

Ten years after the purchase of this Fixed Annuity (and thus approximately three years after the penalty withdrawal period had ended), Equitable informed plaintiff of a method whereby he could receive monthly interest payments from the annuity. (Compl. ¶ 21.) Relying on this information, plaintiff changed his annuity accordingly. As defendants have

specified, and plaintiff does not contest, plaintiff purchased an "Equi–Vest Tax Deferred Variable Annuity" ("Variable Annuity").[1] A variable annuity is different from a fixed annuity in that the seller invests the annuitant's principal in various securities and other investments before the payment stream begins. The annuitant generally controls how the principal is invested, and the future payment stream from the annuity depends on the value of the portfolio over time. Variable annuities must be registered with the SEC as securities under the Securities Act of 1933, *codified at* 15 U.S.C. § 77a *et seq.* Variable annuities are primarily sold by insurance companies, and must be offered through "separate accounts" that must be registered with the SEC as investment companies under the Investment Company Act of 1940 ("1940 Act"), *codified at* 15 U.S.C. § 80a–1 *et seq. See generally Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101 (2d Cir.2001).

Plaintiff claims that he was unaware that Equitable regarded the switch from the Fixed Annuity to the Variable Annuity as a policy transfer, or that Equitable deemed plaintiff's acceptance of the interest payments as the commencement of a new annuity with a new penalty withdrawal period. (Compl.¶¶ 21–23.) Plaintiff thus appears to claim that he did not understand that he was purchasing a new annuity policy. Plaintiff claims that Equitable sent him forms "which provided for the transfer" of his Fixed Annuity, and that he was never informed that he was

initiating a new annuity. (Compl.¶ 22.) The Complaint refers to "switching" plaintiff's annuity and to "instituting a procedure whereby he would receive monthly interest payments," (P. Mem.1), but not to "purchasing" or "buying" a new policy. In July 2000, when plaintiff sought to move his annuity to another company, Equitable imposed a withdrawal penalty fee and deducted $6,743.80 from the funds in the Variable Annuity before allowing plaintiff to withdraw money from the policy. (Compl.¶ 55.)

Plaintiff claims that Equitable routinely encourages policy holders to transfer an existing annuity policy into a different policy (a practice plaintiff calls "switching" or "flipping"), and that Equitable agents failed to disclose to plaintiff costs associated with switching the annuity, such as the commencement of a new penalty withdrawal period upon the transfer. (Compl.¶ 16.) Plaintiff notes that a policy with an unexpired penalty withdrawal provision is less valuable than a policy with no penalty for withdrawal of funds (Compl.¶ 13), and claims that failure to disclose the commencement of a new penalty withdrawal period misled the plaintiff about the effect the switch would have on the value of his annuity policy.

## DISCUSSION

### I. *Legal Standard for Remand*

 When the removal of an action to federal court is contested, "the burden falls squarely upon the removing party to

---

**1.** The Complaint does not provide the proper name of the new annuity entered into by plaintiff in 1997. However, plaintiff does not contest that the new annuity actually is the Equi–Vest Tax Deferred Variable Annuity defined by defendants in the Notice of Removal, by way of the Affidavit of Naomi Weinstein, sworn to March 11, 2003 ("Weinstein Aff."), attaching the annuity prospectus as well as an

annuity application and statement signed by plaintiff. Since there is no doubt that plaintiff had actual notice of these documents, the court will consider these documents for purposes of this motion and it is not necessary to convert it into a Rule 56 motion for summary judgment. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991).

establish its right to a federal forum by 'competent proof.'" *R.G. Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651, 655 (2d Cir.1979), quoting *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Out of respect for the independence of state courts, and in order to control the federal docket, "federal courts construe the removal statute narrowly, resolving any doubts against removability." *Somlyo v. J. Lu–Rob Enterprises, Inc.,* 932 F.2d 1043, 1045–46 (2d Cir.1991) (*citing Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)).

## II. *Federal Question Jurisdiction*

A civil action filed in state court may be removed to federal court if it is "founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1331. In determining whether a claim arises under federal law, the court "examine[s] the 'well pleaded' allegations of the complaint and ignore[s] potential defenses[.]" *Beneficial National Bank v. Anderson,* 539 U.S. 1, 123 S.Ct. 2058, 2062, 156 L.Ed.2d 1 (2003). The well-pleaded complaint rule "provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.... The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). It is well established that a defense relying on the preemptive effect of a federal statute does not normally provide a basis for removal. *Beneficial National Bank,* 539 U.S. at 1, 123 S.Ct. at 2062. Thus, as a general matter, where there is no diversity jurisdiction, it is for a state court to decide whether federal law provides a defense to state-law claims by preempting those claims.

A narrowly-defined exception to the well-pleaded complaint rule applies in rare cases of so-called "complete preemption" in which either (1) a federal statute has been held to wholly displace the state-law cause of action because the subject matter is inherently federal; or (2) Congress has expressly provided that a state-law claim be removed to federal court, as it did in SLUSA, 15 U.S.C. §§ 77p(c), 78 bb(f)(2).

Here, the Court must decide both a jurisdictional motion (plaintiff's motion to remand) as well as a motion on the merits (defendants' motion to dismiss), both requiring an interpretation of SLUSA. While SLUSA contains separate provisions regarding (1) preemption as a jurisdictional mechanism requiring removal, *see* 15 U.S.C. §§ 77p(c), 78bb(f)(2), and (2) preemption as a defense to state-law claims, *see* 15 U.S.C. § 77p(b), 78bb(f)(1), the analysis for removal and dismissal is essentially the same. That is because if there is no federal subject matter jurisdiction, the merits of the preemption defense are never reached, but if there *is* subject matter jurisdiction under SLUSA over a specific claim, then the Court *must* dismiss that claim. As Judge Newman has noted:

> In the context of complete preemption, [preemptive removal and the defense of preemption] are the opposite sides of the same coin.... [I]f the district court determines that the criteria for complete preemption have been met, the district court, after ruling in favor of its subject matter jurisdiction, is then obliged to dismiss for failure to state a claim, because the state law basis on which the plaintiff has attempted to proceed has been preempted by federal law.

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 332 F.3d 116, 132 (2d

Cir.2003) (Newman, J. concurring). In other words, the same factors will decide both the remand and the dismissal motions.

## III. *Removal*

### A. *Statutory Requirements*

The Court now turns to the analysis of whether plaintiff's lawsuit falls under SLUSA. In order to exercise jurisdiction, the Court must have subject matter jurisdiction over at least one of the three state-law claims. Congress specifically provided in SLUSA's removal clause that: "Any covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b)." 15 U.S.C. § 77p(c).[2] This removal clause references "subsection (b)," the dismissal clause of the statute, which provides that:

> No covered class action based upon the statutory or common law of any State ... may be maintained in any State or Federal court by any private party alleging(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b).

The pertinent questions are: (1) Is this a "covered class action" under the statute? (2) Is the Variable Annuity a "covered security" within the meaning of the statute? And if so, (3) Does plaintiff allege untrue statements or omissions "in connec-

tion with" the sale or purchase of the Variable Annuity? Since the answer to all three questions is "yes," federal subject matter jurisdiction exists pursuant to SLUSA.

### (1) *"Covered Class Action"*

■ SLUSA defines a "covered class action" as, *inter alia,* "any single lawsuit in which ... one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate." 15 U.S.C. § 77p(f)(2)(A)(i)(II). The face of the Complaint demonstrates that this lawsuit meets the relevant criteria. First, Winne brings the suit on behalf of himself and a class of all others similarly situated (Compl.¶ 1), which may number in the thousands (Compl.¶ 11(a)). Second, he alleges that "[c]ommon questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members" (Compl.¶ 11(b)). Moreover, in the papers on remand Winne does not contest that if the securities at issue are "covered securities" then the case is a "covered class action" under SLUSA. The Court concludes that as a matter of law the action is a covered class action under SLUSA.

### (2) *"Covered Securities"*

■ Under SLUSA § 77p(f)(3), incorporating the definition of "covered security" in § 77r(b)(2), a covered security is one that is "issued by an investment company that is registered, or that has filed a regis-

---

**2.** SLUSA amends the 1933 Act, at 15 U.S.C. § 77p, as well as the 1934 Act, at 15 U.S.C. § 78bb, with nearly identical language, save for the subsection numbers. Unless other-

wise indicated, references to § 77p incorporate references to identical language in § 78bb.

tration statement, under the Investment Company Act of 1940." Equitable is an insurance company that is *not* registered under the 1940 Act, and plaintiff argues that therefore the Variable Annuity is not covered under SLUSA. (P. Opp.2.) However, the Second Circuit has recently described variable annuities covered by SLUSA, and specifically held that the insurance company issuing the policy need not itself be registered under the 1940 Act as long as the separate account in the annuity is so registered. Relying on *SEC v. Variable Annuity Life Ins. Co.*, 359 U.S. 65, 79 S.Ct. 618, 3 L.Ed.2d 640 (1959) (holding that a variable annuity is classified as a "security"), the Circuit found that a variable annuity is a "covered security" under SLUSA if it is offered through a separate investment account that is registered with the SEC as an investment company pursuant to the 1940 Act. *See Lander*, 251 F.3d at 109. Other courts support this reading. *See Patenaude v. Equitable Life Assurance Soc.*, 290 F.3d 1020, 1024 (9th Cir.2002); *Araujo v. John Hancock Life Ins. Co.*, 206 F.Supp.2d 377, 381 (E.D.N.Y.2002); *Herndon v. Equitable Variable Life Insurance Co.*, 325 F.3d 1252 (11th Cir.2003).

Under *Lander*, the structure of an annuity determines whether it is a covered security under SLUSA. In order to determine the structure of the Variable Annuity, the Court turns to the prospectus issued by Equitable describing the terms of the policy, which is incorporated by reference to the Variable Annuity in the Complaint. (*See* Equivest Prospectus, dated May 1, 1996 ("Prospectus"), Ex. 1 to Weinstein Aff.) The Variable Annuity has multiple investment options called "variable investment funds" which are organized in "Separate Account A." (Prospectus 24.) Separate Account A is a type of investment company which is registered with the SEC under the 1940 Act. (*Id.*) Because it

thus meets the requirements set forth in *Lander*, the Variable Annuity is a "covered security" under SLUSA.

■ Plaintiff argues in the alternative that because he did not take advantage of the investment options available through the separate account, but rather placed his funds in the guaranteed investment account portion of the annuity which is not a registered separate account, the Variable Annuity is not covered by SLUSA for purposes of this lawsuit. Indeed, the Prospectus states that the annuitant *may* allocate some or all contributions among the investment funds in that separate account (Prospectus 24), and does not indicate that the annuitant *must* use the separate account's investment options. However, SLUSA coverage is dependent on the structure of the annuity, not on how an annuitant chooses to allocate funds within the annuity. The fact remains that Winne purchased a variable annuity that meets the structural definition of a covered security under SLUSA. Whether or not he chose to utilize the registered separate account that creates SLUSA coverage is irrelevant.

### (3) *"In Connection With"*

■ Plaintiff argues that SLUSA does not apply because his claims do not arise "in connection with" the purchase or sale of a covered security. This argument relies on a faulty characterization of the penalty withdrawal charge associated with the Variable Annuity as a fee external to the value of the security itself. Plaintiff would have the Court understand the withdrawal penalty as an extrinsic charge that is part of the transaction withdrawing funds from the security, and not as an annuity feature that affects the security's intrinsic value. In support of this position, plaintiff cites *Spielman v. Merrill Lynch, Pierce, Fen-*

*ner & Smith, Inc.,* 2001 WL 1182927 (S.D.N.Y. Oct. 9, 2001) (DLC), *appeal dismissed,* 332 F.3d 116 (2d Cir.2003), where the court relied on law arising under § 10(b) of the 1934 Act to interpret the "in connection with" language of SLUSA. The district court in *Spielman* found that plaintiffs did not claim fraud "in connection with" the purchase or sale of a security where they alleged that the defendant brokerage firm charged its account holders undisclosed transaction fees in connection with trades into or out of their accounts. Judge Cote found that the transaction fees were a "cost [that] is part of [defendant's] bargain with its accountholders and is not sufficiently connected to the underlying securities to meet the requirement that the misrepresentation about those fees be 'in connection with' the purchase or sale of covered securities." *Id.* at *5.

The logic in *Spielman* is persuasive, but the case is inapposite on the facts. The critical distinction is that in *Spielman*, the fee at issue was a transaction fee charged by a brokerage firm for trades of shares in and out of a customer's account. The fee had no relationship to the value of the securities traded, and did not affect the value of the securities held in the account. The other cases cited by plaintiff in support of his position are distinguishable on similar grounds. *See Shaw v. Charles Schwab & Co.,* 128 F.Supp.2d 1270, 1274 (C.D.Cal.2001), *appeal dismissed,* 45 Fed. Appx. 651, 2002 WL 1929469 (9th Cir.2002) (SLUSA not applicable because brokerage firm commissions are not intrinsically related to value of securities traded); *Abada v. Charles Schwab & Co.,* 127 F.Supp.2d 1101, 1103 (S.D.Cal.2000), *appeal dismissed,* 300 F.3d 1112 (9th Cir.2002) (SLUSA not applicable because broker representations about on-line trading system are not intrinsically related to value of securities traded).

Unlike the cases cited by plaintiff, where a contested charge was a feature of the broker-customer relationship, here the charge is a component of the internal structure of the security. The penalty withdrawal fee is a feature of the annuity that is charged by the issuer. The Complaint concedes—indeed, it is a part of plaintiff's argument—that the underlying value of the Variable Annuity is affected by the withdrawal penalty, because the penalty makes the annuity less valuable than a similar annuity without the penalty feature. (Compl.¶ 13.)

Finally, although plaintiff uses opaque language to describe the transfer of funds to the Variable Annuity, as if to imply that he only ever held a single Equitable annuity, there can be no doubt, based on the documents incorporated by reference in the Complaint, that he actually purchased the new Variable Annuity, and did not merely modify components of the existing Fixed Annuity. At one point, plaintiff states that in 2000, when he tried to move his annuity to another company, "Equitable insisted that [he] was still subject to a withdrawal fee although his Equitable annuity had been in existence for more than 13 years, far longer than the applicable seven year withdrawal period." (P. Mem.3.) This implies that plaintiff only had one Equitable annuity governed by the original contract providing for the original penalty withdrawal period. However, the documents incorporated by reference in the Complaint demonstrate that plaintiff purchased the new Variable Annuity in 1997. On February 11, 1997, plaintiff signed an Equi–Vest Tax–Deferred Variable Annuity Application as well as a Replacement Information Statement ("Statement") replacing the Fixed Annuity contract with the Variable Annuity contract. (Exs. 2 & 3 to Weinstein Aff.) The Statement provides in pertinent part that Winne "acknowledges receipt of

this statement [and the relevant prospectus] and approves ... the *purchase* of the [Variable Annuity] Contract...." (Ex. 3 to Weinstein Aff., emphasis added.) The Statement further provides that Winne "understands that the terms and conditions described [in the Variable Annuity prospectus], including but not limited to the schedule of withdrawal charges applicable to [the Variable Annuity], will be applicable with respect to the [Variable Annuity] Contract." (*Id.*) [3]

Essentially, plaintiff alleges that defendants induced him to purchase the Variable Annuity by failing to disclose the penalty withdrawal fee and the effect it has on the underlying value of the policy. Accordingly, there can be no real dispute that when plaintiff claims that defendants misrepresented material facts about the penalty withdrawal fee of the Variable Annuity, plaintiff is alleging "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security."

### (4) *Summary*

SLUSA's removal provision applies here because the relevant criteria under the statute are met. First, the action is a (putative) "covered class action" because it is brought on behalf of similarly situated individuals and common questions of law and fact predominate. Second, the Variable Annuity is a "covered security" under *Lander* because it includes a separate investment account registered with the SEC under the 1940 Act. Third, the allegations of misrepresentations about the penalty withdrawal fee are allegations of misrepresentations "in connection with" the sale or purchase of a covered security because the penalty is an intrinsic component of the security and not an extrinsic transaction fee.

### B. *Additional Issues*

Plaintiff raises two other arguments in support of his position that SLUSA removal does not apply here. First, plaintiff contends that in order to be removed under SLUSA, a state-law claim must allege fraudulent intent or scienter, and the state-law claims do not do so. (P. Mem.13.) Second, plaintiff contends that SLUSA preemption here would be an impermissible retroactive application of the statute because the switch occurred before the enactment of the statute. (*Id.* 17.) Those arguments are rejected for the reasons that follow.

### (1) *Scienter*

■ Plaintiff argues that SLUSA only applies to state-law claims requiring scienter, and that since his claim for deceptive business practices under N.Y. General Business Law § 349 does not require an intent to defraud, *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000), that claim is not preempted. (P. Opp.8.) The argument that SLUSA preempts only state-law claims alleging scienter must fail because no language in the statute supports it. Plaintiff relies primarily on cases from other districts that have imported the SEC Rule 10b–5 scienter element into SLUSA. *Burns v. Prudential Sec., Inc.*, 116

---

3. Plaintiff's characterization of the transaction may well derive from what he was told when the sale was made. To the extent that Equitable misrepresented the transaction, its conduct was fraudulent. But if Equitable is responsible for plaintiff's misunderstanding, that is simply another way of saying that it misrepresented the nature and value of the securities transaction it was proposing to plaintiff. It does not mean that any fraud that was committed was anything other than a fraud in connection with the sale of a security.

F.Supp.2d 917, 922–23 (N.D.Ohio 2000); *Simon v. Internet Wire, Inc.*, 2001 WL 688542, *2 (C.D.Cal. Apr. 3, 2001); *Green v. Ameritrade, Inc.*, 120 F.Supp.2d 795, 798 (D.Neb.2000), *aff'd on other grounds*, 279 F.3d 590 (8th Cir.2002). This Court respectfully disagrees with the analyses in those decisions.

First, the statute itself contains no language requiring scienter for SLUSA to apply. As Judge Cote has noted, "[n]othing in the language of Section 77p suggests that it bars only state law claims that plead a certain level of scienter." *In re WorldCom, Inc.*, 263 F.Supp.2d 745, 769 (S.D.N.Y.2003) (finding that SLUSA does not require allegations of scienter in dismissing state-law negligence claim under SLUSA where statutory requirements are otherwise met).

Second, there is no reason to read a scienter requirement into SLUSA based on caselaw arising under § 10(b) of the 1934 Act (the statutory basis for SEC Rule 10b–5). SLUSA amends more than just that provision, including provisions that do not require scienter. SLUSA contains nearly identical language amending both the 1934 Act (*amended at* 15 U.S.C. § 78bb) and the 1933 Act (*amended at* 15 U.S.C. § 77p). Claims brought under § 11 or 12(a)(2) of the 1933 Act (*codified at* 15 U.S.C. §§ 77k and 77l(a)(2)), regarding false registration statements and false prospectuses and communications, respectively do not require a showing of intent to deceive. "Thus," as the Eleventh Circuit has noted in a similar context, "SLUSA preempts *some* claims—namely, those brought under § 11 or 12(a)(2) of the 1933 Act—that lack a scienter requirement." *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1346 (11th

Cir.2002) (emphasis in original) (affirming dismissal ·of state-law negligence claim under SLUSA because SLUSA does not require scienter). *See also In re WorldCom,* 263˙F.Supp.2d at 769 (employing identical logic in dismissing state-law negligence claim).

There is no contradiction between relying on securities fraud caselaw when interpreting the "in connection with" language of SLUSA, and simultaneously rejecting plaintiff's invitation to import a scienter requirement into SLUSA based on similar language in § 10(b) of the 1934 Act. Both results are consistent with and compelled by the relevant statutory language.

Interpreting "in connection with" in SLUSA in light of the caselaw interpreting the same words in § 10(b) makes sense. SLUSA requires removal of, and preempts, class actions that either allege "(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendants used or employed any manipulative or deceptive device in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b). Thus, both categories of preempted claims contain the "in connection with" language that has frequently been interpreted in securities fraud cases. There is no reason to believe that Congress intended the phrase to have a different meaning in SLUSA than it has in other securities fraud contexts.

Plaintiff, in contrast, seeks to import the scienter requirement of § 10(b) of the 1934 Act (15 U.S.C. § 78j(b)) into SLUSA, noting the use in SLUSA of language similar to that in § 10(b). However, the scienter requirement of § 10(b) derives from the language found in only one of the two clauses of the relevant SLUSA provisions.[4]

---

4. Section 10(b) makes it unlawful "to use or employ, in connection with the purchase or

sale of any security ... *any manipulative or deceptive device or contrivance* in contraven-

Thus, claims preempted by 15 U.S.C. § 77p(b)(2) may incorporate a scienter requirement. But SLUSA also preempts, via § 77p(b)(1), covered class actions alleging "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security." Section 77p(b)(1) does *not* contain the language in § 10(b) from which a scienter requirement is inferred. To the contrary, it preempts claims based on the making of any "untrue statement or omission" without any limitations based on the intent of the person making them.

Plaintiff's claims of deceptive business practices in violation of New York law are based squarely on allegations of untrue statements or omission of material facts. The claims are thus preempted under the plain language of § 77p(b)(1), regardless of whether the New York statute requires intent to deceive. Plaintiff's approach of reading SLUSA against similar language in the 1934 Act may be a valid method of interpreting one portion of SLUSA's preemption provision, but it only applies to one subsection out of two.[5]

### (2) *Retroactivity*

Finally, plaintiff argues that SLUSA should not apply here because the Complaint, filed in February 2003, is based on the purchase of an annuity in 1997, before SLUSA's effective date of November 3, 1998. (P. Opp.6.) Retroactive application of a statute is traditionally disfavored because "considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). However, in accordance with principles articulated in *Landgraf,* since SLUSA governs only procedural requirements and is not substantive in scope, it may be applied to suits (like this one) that were filed after the date of the statute's enactment, even if those suits concern pre-enactment conduct. As a number of other courts have found, "the relevant conduct regulated by the statute is secondary conduct, the filing of the lawsuit, not the primary, allegedly illegal pre-enactment conduct." *Professional Mgmt. Assoc., Inc. Employees' Profit Sharing Plan v. KPMG LLP*, 335 F.3d 800, 803–04 (8th Cir.2003) (finding no retroactivity analysis warranted because SLUSA simply establishes a procedural rule). *See also Gray v. Seaboard Securities, Inc.*, 241 F.Supp.2d 213, 217–18 (N.D.N.Y.2003) (finding that SLUSA does not raise retroactivity concerns in case filed post-enactment concerning pre-enactment conduct); *W.R. Huff Asset Management Co. v. Kohlberg Kravis Roberts & Co.*, 234 F.Supp.2d 1218 (N.D.Ala. 2002) (applying SLUSA to remove and

---

tion of such rules and regulations as the [SEC] may prescribe." (Emphasis added). The Supreme Court has found that a scienter requirement inheres in this provision because "[t]he words 'manipulative or deceptive' used in conjunction with 'device or contrivance' strongly suggest that § 10(b) was intended to proscribe knowing or intentional misconduct." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

**5.** The broad effect of a literal reading of § 77p(b)(1) is consistent with Congress's purpose in enacting SLUSA. Congress intended to prevent the migration of meritless class action strike suits from federal to state court, which was an unintended consequence of the stringent procedural hurdles erected by the Private Securities Litigation Reform Act of 1995. *See Lander,* 251 F.3d at 107. It would make little sense, in light of that purpose, to preempt claims that exactly track federal law, but permit state class actions where state law permits even broader liability than federal securities law.

dismiss state-law claims regarding pre-enactment conduct filed post-enactment).

SLUSA regulates the filing and prosecution of class action lawsuits, and not defendant's underlying conduct. As such, SLUSA does not affect plaintiff's substantive rights, but only the procedure by which those rights may be vindicated. SLUSA does not prevent plaintiff from prosecuting his state-law claims in state court in an individual action, as opposed to a class action, nor does it prevent plaintiff from bringing a federal law class action, provided that he meets procedural requirements for such an action. While SLUSA restricts plaintiff's procedural options, there is no absolute right to file a state-law class action, *Crane v. Hahlo*, 258 U.S. 142, 147, 42 S.Ct. 214, 66 L.Ed. 514 (1922) ("[n]o one has a vested right in any given mode of procedure"), and SLUSA does not impair plaintiff's substantive rights to pursue his claims. Therefore, the statute may be applied in this case.

### III. *Dismissal*

■ Because the removal and dismissal provisions of SLUSA are intertwined, once the Court determines that federal subject matter jurisdiction exists pursuant to the statute, it is a short step to dismissal of the state-law claims, *see* Section II above. Plaintiff raises one final argument, however. He argues that even if federal jurisdiction exists under SLUSA, then only those claims that are expressly preempted by the statute should be dismissed, and the other state-law claims should be remanded. (Letter to the Court from Lawrence D. Levit, dated October 13, 2003.) Indeed, as another court in this Circuit has noted, "the fact that SLUSA preempts *some* causes of action in a complaint does not entitle a defendant to broadly invoke federal preemption against the entire complaint." *Gray*, 241 F.Supp.2d at 219 (emphasis in original) (dismissing certain state-law claims under SLUSA, and exercising supplemental jurisdiction over the remaining state-law claims). If a non-preempted state-law claim is appended to a claim preempted under SLUSA, federal jurisdiction over the latter would permit removal of the entire case, to the extent authorized by the doctrine of supplemental jurisdiction. But in such a case, only the preempted claim would be dismissed on the merits; the pendent claims could then be adjudicated or remanded to state court. In this case, however, because all three state-law causes of action fall within SLUSA's parameters, the Complaint will be dismissed in its entirety.

### A. *Deceptive Business Practices*

■ The first cause of action alleges a claim under N.Y. General Business Law § 349 for deceptive business practices. As explained above, this claim alleges that in connection with selling the Variable Annuity to plaintiff, defendant misrepresented or omitted a material fact about the penalty withdrawal period incorporated in the Variable Annuity that affects the underlying value of the security. Thus, this claim falls within SLUSA's scope and must be dismissed.

### B. *Breach of Contract*

■ The second cause of action alleges breach of contract, although plaintiff points to no specific term in any contract that was breached. Two necessary elements of a breach of contract cause of action are a valid contract between the parties, and a breach of that agreement. *Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir.1996). Plaintiff does not allege that defendants breached the Fixed Annuity contract by charging a penalty fee for withdrawing funds from the Fixed Annuity

after the fee period in the Fixed Annuity contract had expired; according to the Complaint, plaintiff was not charged a penalty when he moved funds into the Variable Annuity from the Fixed Annuity. Nor does plaintiff allege that the penalty withdrawal fee imposed when plaintiff withdrew funds from the Variable Annuity violated the terms of the Variable Annuity contract.

Rather, reading the Complaint in its entirety, plaintiff seems to allege that he did not know that he was purchasing a new annuity at all when he purchased the Variable Annuity. The Complaint repeatedly refers to the allegedly deceitful practice of "switching" or "flipping" annuities, but not to "purchasing" or "selling" an annuity, although it is undisputed that plaintiff did actually purchase a Variable Annuity. The Complaint refers to a *"scheme"* to induce policyholders to "flip their policies" and states that policyholders "are typically *misled* into believing that if the withdrawal penalty provision of their policy had expired, they would not be subjected to a new withdrawal penalty period when their policy was switched" (Compl. ¶ 16, emphasis added). The cause of action for breach of contract states that *"[u]nbeknownst* to

the plaintiff ... the flipping of policies provided Equitable agents with substantial commission payments and, although *undisclosed* by Equitable or the agents, subjected the plaintiff ... to a new or extended withdrawal penalty period." (Compl. ¶ 35, emphasis added). In using such language, plaintiff appears actually to be alleging fraud in the inducement to enter the Variable Annuity contract, not a breach of the Fixed Annuity contract. Thus, plaintiff's breach of contract claim is really a fraud claim, which must be dismissed under SLUSA because it alleges that defendants deceived plaintiff about the fact that he was purchasing a new Variable Annuity.[6]

## C. *Unjust Enrichment*

The third cause of action alleges that defendants were unjustly enriched by the fees that they imposed upon plaintiff as a result of inducing him to "switch" his annuity. To the extent that "switching" refers to a practice of deceitfully inducing plaintiff to buy a new annuity, this cause of action is simply another way of alleging misrepresentation or fraud in connection with the sale of the Variable Annuity. As such, the claim falls within SLUSA's parameters and must be dismissed.[7]

6. Were this Court to find that SLUSA did not apply to the breach of contract claim, and to retain supplemental jurisdiction over it pursuant to 28 U.S.C. § 1367(a), the claim would be dismissed for failure to state a cause of action because, as discussed above, plaintiff has not pointed to any contract clause that was breached. In particular, plaintiff does not allege that Equitable promised him that, in return for purchasing a Fixed Annuity, Equitable would absorb withdrawal fees for any Equitable product purchased by plaintiff after the expiration of the penalty period of the Fixed Annuity. The Court expresses no view as to whether such an oral promise, not embodied in any document defining the Fixed Annuity, would be enforceable under New York law, or whether a class action alleging breach of it would be preempted by SLUSA.

7. Were the Court to interpret this cause of action as an unjust enrichment claim not preempted by SLUSA and exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), then the claims would be dismissed for failure to state a cause of action since the elements of an unjust enrichment claim are simply not present. Here, the penalty withdrawal fee was imposed pursuant to a contract, and it is well established that unjust enrichment is an equitable doctrine that pertains in cases of "quasi contract," and cannot be applied to vary the terms of an actual agreement. *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) (" 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation im-

## CONCLUSION

For the foregoing reasons, this Court has subject matter jurisdiction pursuant to SLUSA, and plaintiff's motion to remand is denied. Because all claims in the Complaint are preempted by SLUSA, the Complaint is dismissed in its entirety. The Clerk of Court is respectfully directed to mark the case closed.

SO ORDERED.

posed in order to prevent a party's unjust enrichment'').