**Michael MAGYERY, individually and for all others similarly situated, Plaintiff,**

v.

**TRANSAMERICA FINANCIAL ADVISORS, INC., Lawrence Hill and Hill & Associates, Inc. Defendants.**

**No. 3:03 CV 0777 AS.**

United States District Court, N.D. Indiana, South Bend Division.

April 16, 2004.

ble implication of the GD F–16 program on the United States.

Scott L. Starr, Logansport, Thomas R. Hamilton, South Bend, IN, for Plaintiff.

Alison G. Fox, Paul Fischer and James Jorden, Washington, DC, Paul J. Peralta, South Bend, IN, for deft. Transamerica.

Kevin M. O'Hagan, Chicago, IL, Michael W. Van Zalingen, Forest Park, IL, for defts Hill & Associates, Inc. and Hill.

## *MEMORANDUM AND ORDER*

ALLEN SHARP, District Judge.

This cause is before the Court on the Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), and the Plaintiffs' Motion to Remand the action to State Court. Plaintiffs filed this litigation as a putative class action in state court under four state law theories: conversion; breach of contract; breach of fiduciary duty; and negligent supervision. The Defendants removed to federal court, alleging that Plaintiffs' state law claims are completely preempted by the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 78bb(f) ("SLUSA"). Plaintiffs seek remand to state court alleging that SLUSA preemption does not apply to this litigation.

The issues have been briefed, and all appropriate replies and responses submitted. This Court heard oral arguments on the motions on March 3, 2004, and now rules as follows.

## I. BACKGROUND

The following statement of facts is the Plaintiffs' version, which must be taken as true for purposes of the Motion to Dismiss. Defendant Transamerica Financial Advisors, Inc., is a brokerage firm, and Defendant Lawrence Hill is an agent for Transamerica with an office in Elkhart, Indiana. Pls' Mem. in Supp. at 1–2. Plaintiff Michael Magyery invested his retirement funds with Transamerica and Hill. *Id.* at 2. When Magyery opened his account, he signed an agreement on a standard, pre-printed form provided by the Defendants. *Id.* at 3. This form contains statements which he claims create a binding contract with the Defendants that they would only buy or sell securities in Magyery's account with his express permission. *Id.* For example, the agreement states, "I appoint TFR (Transamerica Financial Resources) as my agent for the purposes of carrying out my directions with respect to the purchase or sale of securities." *Id.*

On September 21, 2001, "there was a lot of panic selling" because many analysts, including Hill, believed financial markets were poised for a dramatic downturn due to the September 11 tragedy. *Id.*, *citing* Magyery Affidavit at ¶ 9. Hill believed he had to act swiftly to protect his clients, so on Friday, September 21, 2001, Hill reallocated funds in Magyery's account from several sub-accounts invested in the equities markets to the ASP Money Market sub-account. *Id.* The following Monday, instead of collapsing, the market improved. *Id.* at 5. Hill immediately reallocated Magyery's account back into the equities market, but by the end of the day, the indexes increased in value by four to five percent. *Id.*

Magyery claims that this unauthorized trading caused his retirement account to lose a substantial sum of money. In addition, he believes that Hill sold and repurchased the equity accounts of other clients, causing them to suffer losses. Therefore, on September 22, 2003, he filed a putative class action in Elkhart Superior Court on his own behalf and on behalf of other clients who suffered losses in connection with Hill's unauthorized trading, alleging breach of contract, conversion, breach of fiduciary duty, and negligent supervision, all State law causes of action. On October 21, 2003, the Defendants removed the case to federal court relying on the removal provision in SLUSA, 28 U.S.C. § 1441(b), and 15 U.S.C. 78bb(f)(1).

## II. JURISDICTION

Jurisdiction is the key issue in all motions currently before the Court in this case. If the Plaintiffs' state law claims are preempted by SLUSA, they must be dismissed. If they are not preempted, this Court lacks jurisdiction, and the case must be remanded to state court. Therefore, the Court must determine first if this is the kind of claim that Congress intended to preempt as part of the overall remedial purpose of SLUSA.

### A. Standard of Review for Preemption

■ A state court civil action may be removed to federal court under 28 U.S.C. § 1441(b) if the claim arises under federal law. *Fedor v. Cingular Wireless Corp.*, 355 F.3d 1069, 1071 (7th Cir.2004), *citing, Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). However, under the "well-pleaded complaint rule", the plaintiff who has both state and federal claims may avoid federal court by limiting his or her complaint to only state law claims. *Id.* Under this rule, a case will not be removable if the complaint does not affirmatively allege a federal claim. *Id.* Even the availability of a federal defense to the state law claims does not provide a basis for removal. *Id.*

The Plaintiffs in this case carefully crafted their complaint to plead only state law claims. That would end the inquiry except that the well-pleaded complaint rule has an exception, where a federal statute so occupies the field that it completely preempts the state-law cause of action. *Id.* In that case, the claim, although pleaded in terms of state law, is in reality based on federal law, making the claim removable under Section 1441(b). *Id., citing Beneficial,* 123 S.Ct. at 2063.

## B. Discussion

In the 1990's, Congress enacted two statutes designed to provide relief to corporations from abuses in private securities fraud litigation. H.R. Conf. Rep. No. 105–803, 1998 WL 703964, *see also, Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101, 107 (2nd Cir.2001), and *Green v. Ameritrade,* 279 F.3d 590, 595 (8th Cir. 2002). The first of these, the Private Securities Litigation Reform Act of 1995 (PSLRA), U.S.C. §§ 77z–1, 78u–4, was enacted to curb "strike suits", lawsuits started to extract a sizeable settlement from companies that are forced to settle, regardless of the merits of the suit, simply to avoid the potentially bankrupting expense of litigation. *Id., see also, Green v. Ameritrade,* 279 F.3d 590 (8th Cir.2002), and *Burns v. Prudential Securities,* 116 F.Supp.2d 917, 921 (N.D.Ohio 2001).

To accomplish its purpose of limiting meritless strike suits, the PSLRA contains heightened pleading requirements, mandatory staying of discovery pending motions to dismiss, and the creation of a "safe harbor" for certain forward looking statements. *Green v. Ameritrade,* 279 F.3d 590, 595, *see also, Lander,* 251 F.3d at 107; and *Burns,* 116 F.Supp.2d at 921. However, one immediate effect of the PSLRA was to drive many would-be class action plaintiffs to file their claims in state court, based on state law, in order to circumvent the strong requirements established by the statute. *Id.*

Congress responded by passing SLUSA, which makes federal courts the exclusive venue for class actions alleging a misrepresentation or omission of a material fact in connection with a covered security. *See,* H.R. Conf. Rep. No. 803 at 13; 15 U.S.C. §§ 77p(b)-(c): and 15 U.S.C. §§ 78bb(f)(1)(A). SLUSA provides:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security;

15 U.S.C. §§ 77bb(f)(1)(A). In other words, Plaintiffs' state law claims are completely preempted under SLUSA if Defendants can establish four elements: (1) a "covered class action," (2) that is based on state law; (3) alleging a misrepresentation or omission of material fact, (4) "in connection with" the purchase or sale of a covered security. *Green v. Ameritrade,* 279 F.3d at 596.

The parties agree that this is a class action, and that it involves covered securities. The primary dispute is on the third element, whether there is a misrepresentation or omission of material fact. The parties' briefs contain some discussion of the "in connection with" element, but the Plaintiffs' Complaint is based on the illegal selling and then repurchasing of the funds in their equity accounts, therefore, the claims have some connection with the purchase or sale of covered securities. The issue is whether the Defendants made misrepresentation or omissions of material fact in connection with those sales.

In this case, the removal issue is dispositive on the question of jurisdiction, and on

all pending motions. Because it was enacted in 1998, the case law is limited on the scope of SLUSA's preemptive reach, and the Seventh Circuit Court of Appeals has yet to rule on the issue. In cases from other circuits, the Eighth Circuit has considered the issue in *Green v. Ameritrade,* 279 F.3d 590 (8th Cir.2002). In *Green,* the district court held that SLUSA preempted the plaintiffs' state-law claims, and dismissed them with leave to file an amended complaint. *Green,* 279 F.3d at 598 n. 7. The plaintiffs' amended complaint had only one count, for breach of contract, with no references to fraud, misrepresentation, or omission. *Id.* The Eighth Circuit then ruled that the amended complaint was not preempted, and the district court's remand to state court was affirmed. *Id.* at 599.

In a case from the Second Circuit, *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* the Court examined SLUSA's statutory language and determined that SLUSA's "preemption" and "removal" provisions provide broad, *but not unlimited,* scope. *Spielman,* 332 F.3d 116, 123 (2nd Cir.2003)(emphasis in the original), *citing* 15 U.S.C. §§ 77p(b)-(c): and 15 U.S.C. §§ 78bb(f)(1)(A). Its scope is limited by the statutory requirements. The Second Circuit reasoned that, under SLUSA, securities fraud class actions based on state law are removable. *Id.* at 124. Once removed, however, the district court must examine the complaint to determine whether the substantive requirements necessary to sustain removal under SLUSA's preemption provision have been satisfied, as these requirements determine whether the district court has subject matter jurisdiction to entertain the action. *Id.*

In *Spielman,* the plaintiffs claimed that the defendants misrepresented the fees

they would be charged on certain transactions. *Id.* at 128. The district court determined that the misrepresentation about fees were not made "in connection with" the purchase or sale of the securities. *Id.* The court reasoned that without this essential nexus, the state law claims were not within SLUSA's preemptive scope and remand was compelled. *Id.* The defendants appealed and the Second Circuit determined that 28 U.S.C. § 1447(d) barred review of the remand order. *Id.* at 129–30.[1]

The Eleventh Circuit has also considered SLUSA's preemptive reach, in *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 292 F.3d 1334 (11th Cir.2002). In *Riley,* the plaintiffs alleged that the defendants made misrepresentations and omissions which caused them to purchase and retain shares of the defendants' investment fund. *Riley,* 292 F.3d at 1345. The Eleventh Circuit held that, while SLUSA does not bar claims alleging misrepresentations affecting solely the retention of shares, where both purchases and retention are alleged, SLUSA bars the claim. *Id.*

Comparing these cases with the present case, the Court first notes that *Green* can be distinguished from this case because, after the plaintiffs in *Green* amended their complaint, it no longer contained any reference to the sale of securities. It was a straightforward breach of contract claim based on the defendants' promise to provide "real time, last sales information" which the plaintiffs alleged was "stale" by the time they received it. In this case, the plaintiffs allege breach of contract, but their claim rests on the unauthorized sale and repurchase of their securities, so there

1. The Eighth Circuit considered the same issue and came to the opposite conclusion, determining that 28 U.S.C. § 1442(d) did not bar appellate review on appeal because remand was based on the statutory provision. *Green,* 279 F.3d at 594–95.

is some connection between the breach of contract claim and the sale of securities.

*Riley* can also be distinguished because in that case, the complaint alleged misrepresentations and omissions. The issue was the fourth element, whether they were in connection with the *purchase or sale* of a security, and the court concluded that they were. In this case, the complaint does not allege misrepresentations or omissions of material fact. *Spielman* can be distinguished for the same reason. The complaint in *Spielman* also alleged misrepresentations and omissions, the issue was the "in connection with" element. In this case, the Plaintiffs carefully crafted their Complaint to avoid any hint of misrepresentation or omission of material fact. Therefore, based on this comparison, it would appear that Plaintiffs have avoided SLUSA's preemptive reach by carefully crafting their complaint.

■ However, the Defendants assert that both misrepresentation and omission can be read into the Plaintiffs' breach of contract claim. According to the Defendants, the Plaintiffs claim that Mr. Hill promised not to buy or sell without their consent. This is allegedly a misrepresentation because he ultimately sold and repurchased their securities without their authorization. Def.s' Reply at 9–10. In addition, the Defendants assert that Mr. Hill's unauthorized sale of the Plaintiffs' securities without telling them qualifies as an omission. *Id.* Therefore, the heart of this case is whether these allegations qualify as misrepresentations and omissions of material fact for purposes of SLUSA preemption, and if so, do the misrepresentation or omissions have a sufficient nexus with the purchase or sale of securities to fall within SLUSA's preemptive reach.

Both parties have cited extensively to district court opinions from other circuits to support their positions. The Plaintiffs cite *Burns v. Prudential Securities, Inc.,* 116 F.Supp.2d, 917 (N.D.Ohio 2000), a case in which the plaintiffs alleged state law claims almost identical to the ones in this case; *MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.,* 216 F.Supp.2d, 251, 257 (S.D.N.Y.2002); and *Gray v. Seaboard Securities, Inc.,* 241 F.Supp.2d 213 (N.D.N.Y.2003). The Defendants cite to *Winne v. Equitable Life Assur. Soc. of the U.S.,* 315 F.Supp.2d 404, 2003 WL 22434215 (S.D.N.Y.2003) as being the most similar to this case. Def.'s Reply at 4. The Defendants also assert that the ruling by the United States Supreme Court, in *Securities and Exchange Commission v. Zandford,* 535 U.S. 813, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002), essentially overrules the holding in *Burns.* Def.'s Reply at 11.

The Court has studied these cases, and others dealing with the same issue, including an unpublished opinion from the Northern District of Illinois. The district court cases appear to be all over the map on the issue of what state law claims are preempted by SLUSA. A careful reading of the cases reveals that many of the differences are based on variations in the facts, but there is a clear split among the courts on the issue of whether the Plaintiffs' claims must allege "scienter" for SLUSA preemption to apply.

According to the United States Supreme Court, "scienter" is "a mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The *Burns* court, in a careful analysis, determined first that unauthorized trading by itself does not constitute securities fraud. *Burns,* 116 F.Supp.2d at 923 (gathering cases). Then, the court noted that the language in SLUSA's preemption clause was similar to language in § 10(b) and Rule 10b–5 of the 1934 Securities Act, the "chief private remedy for securities

fraud." *Id.* at 923. The court held that for SLUSA's preemption clause to apply, the complaint had to allege that the defendants made a misrepresentation or omission of material fact with scienter. *Id.*

In other words, the court in *Burns* determined that only class action complaints containing allegations that could reasonably be construed as a claim for securities fraud would be preempted. Some courts have followed the *Burns* analysis, including *Denton,* 2001 WL 1183292, from the Northern District of Illinois. Other courts to require allegations that the defendant acted with scienter are *Simon v. Internet Wire, Inc.,* 2001 WL 688542, *2 (C.D.Cal. Apr. 3, 2001); *Green v. Ameritrade, Inc.,* 120 F.Supp.2d 795, 798 (D.Neb.2000), *aff'd on other grounds,* 279 F.3d 590 (8th Cir. 2002)( holding that SLUSA should be interpreted based on cases interpreting identical language in SEC Rule 10b–5); and *Shaw v. Charles Schwab & Co.,* 128 F.Supp.2d 1270, 1272–73 (C.D.Cal. 2001)(same).

The Defendants cite the *Winne* case on this issue, in which the court specifically rejected the approach of the *Burns* case requiring scienter. *Winne,* 315 F.Supp.2d at ——, 2003 WL 22434215 at *7. The *Winne* court noted that SLUSA amends more than just § 10(b) of the 1934 Act, and that some of the provisions it amends do not require scienter. *Id.* The court observed that SLUSA contains nearly identical provisions amending both the 1934 Act, and the 1933 Act, and that claims brought under §§ 11 and 12(a)(2) of the 1933 Act do not require a showing of intent to deceive. *Id.* The *Winne* court also cites *Riley,* from the Eight Circuit, to support the position that SLUSA does not require scienter. *Id.,citing, Riley,* 292 F.3d at 1346.

However, the court in *Riley* was faced with a different question than that in

*Winne.* In *Riley,* the plaintiff claimed that the presence or absence of scienter was the *determinative factor* in deciding whether a pleaded state law claim is a mere substitute for the federal securities laws and, therefore, whether it is barred by SLUSA. *Riley,* 292 F.3d at 1346. The Eighth Circuit noted that SLUSA preempts some claims that do not require scienter, but the complaint at issue in *Riley* alleged misrepresentations and omissions of material facts. In *Riley,* the plaintiffs claimed that the defendants made "material Misrepresentations and Omissions [that] induced the Plaintiffs and other Class members to *purchase and retain* shares of the Growth Fund during the Class Period." *Riley,* 292 F.3d at 1345 (emphasis in the original).

The Eighth Circuit noted that the complaint in *Riley* could be distinguished from *Burns* and *Green,* in which the plaintiffs' claims, "while related to securities, were *not* claims for *fraud* at all." *Riley,* 292 F.3d at 1346 (emphasis in the original). The Eight Circuit, therefore, appears to contemplate that a claim for some kind of security fraud is necessary on the face of the complaint for preemption under SLUSA. Similarly, in *Winne,* the plaintiffs alleged misrepresentations and omissions, specifically, that the defendants lied and withheld information that induced them to change their Fixed Annuities for Variable Annuities, resulting in the charge of an early withdrawal penalty. *Winne,* 315 F.Supp.2d at ——, 2003 WL at 22434215 *2.

In *MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.,* another case cited by the Plaintiffs, the court held that the plaintiffs' breach of contract claims were not preempted by SLUSA. *MDCM Holdings,* 216 F.Supp.2d at 255. The court noted that MDCM's complaint only alleged that Credit Suisse signed numer-

ous contracts in which it promised to do one thing but then did another. *Id.* at 257. "The failure to carry out a promise made in connection with a securities transaction is normally a breach of contract. It does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform." *Id.,citing Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993).

The court then reasoned that MDCM did not allege that Credit Suisse had such an intent. *Id.* Furthermore, to prevail on its breach of contract claims, MDCM did not need to offer any evidence about Credit Suisse's mental state, it only needed to prove that Credit Suisse did not satisfy the requirements laid out in the underwriting agreements. *Id.* Therefore, the court held that the contract claims did not involve allegations of misrepresentation or omissions by Credit Suisse.[2]

Where, as here, the issue is statutory construction, and the Court must determine Congressional intent, it is helpful to see if Congress has spoken on the issue. Therefore, the Court carefully considered the Joint Explanatory Statement of the Committee of Conference issued in connection with the passage of SLUSA. H.R. Conf. Rep. 105–803. The Joint Statement indicates that the purpose of Congress in passing SLUSA was to make the Federal courts the exclusive venue for most securities class action lawsuits. *Id.* at *13. The Statement goes on to say that the legislation establishes uniform national rules for securities class action litigation, and that class actions relating to a "covered security" … "alleging *fraud* or manipulation

must be maintained pursuant to the provisions of Federal securities law, in Federal court." *Id.* (emphasis added). In this sentence, the word "fraud" is used in place of the misrepresentation or omission language in the statute.

■ The Statement also addresses the problem of litigation shifting to state courts after passage of the PLSRA, and of a single state being able to impose the risks and costs of its peculiar litigation system on all national issuers. *Id.* at *15. The Joint Statement then says, "The solution to this problem is to make Federal court the exclusive venue for most *securities fraud* class action litigation involving nationally traded securities." *Id.* (emphasis added). This Court concludes that the language in the Joint Statement supports an inference that Congress intended to preempt state law claims containing allegations of misrepresentations and omissions of material fact that could qualify as some kind of securities fraud, even if the claims are couched in other terms.

The Plaintiffs' Complaint alleges classic breach of contract: the parties contracted for a service that included an agreement that Defendant Hill would not buy or sell their securities without their express authorization; he sold their securities and repurchased them with authorization; they suffered damages as a result. Defendants would have the Court read into this breach of contract and unauthorized trading a misrepresentation or omission of material fact sufficient to qualify as securities fraud and require preemption under SLUSA. The Court is not convinced. Although this is a new issue under SLUSA, unauthorized

**2.** The court observed in a footnote that because the determination of whether SLUSA applies may only be made by reference to what a party has alleged, and not what it could have alleged, courts should be wary of a

defendant's attempts to recast the plaintiffs' complaint as a securities lawsuit in order to have it preempted by SLUSA. *Id.,* at 257 n. 12.

trading and breach of contract are not new issues in the context of securities law.

Traditionally, claims of unauthorized trading and breach of contract could not get a plaintiff into federal court under the securities laws. *See, i.e.,* 28 AmJur POF 3d, August 2003 ("unauthorized trading is not a per se violation of § 10(b) of the Securities Exchange Act of 1934 or SEC Rule 10b–5. As such, a complaint alleging nothing more than the fact that the broker effected trades in the customer's account without such customer's knowledge or consent presents simply a breach of contract or breach of fiduciary duty claim"). Attempting to read a fraud claim into a breach of contract claim blurs the distinction between two separate causes of action and merges them into one. *See, i.e., Consolidation Services, Inc. v. KeyBank Nat. Ass'n,* 185 F.3d 817 (7th Cir.1999).

In *Consolidation Services,* the Seventh Circuit noted that the plaintiff's attorney labored under a deep misunderstanding of the meaning of the word "misrepresentation." *Id.* at 823. The Seventh Circuit reasoned, "To him, a promise that is not fulfilled, for whatever reason, is a misrepresentation. This view would turn every breach of contract into a fraud." *Id.* (citations omitted). The Court then observed that a promise is fraudulent "only if it misrepresents the promisor's state of mind." *Id.,citing, among other things,* Restatement 2d of Torts § 530(1) and comment d (1977), *see also, Doe v. Howe Military School,* 227 F.3d 981 (7th Cir.2000) (Under Indiana law, actual fraud may not be based on representations regarding future conduct, or on broken promises, unfulfilled predictions, or statements of existing intent which are not executed.)

The parties agree in this case that the Defendant, Mr. Hill, did not intend to breach the contract. He made the unauthorized sales based on a genuine desire to save his clients money. He did not keep any of the money for his personal use, and he repurchased the securities as soon as he realized the market was going up. The fact that Mr. Hill promised that he would not sell the Plaintiffs' stock without their authorization is not the kind of statement that would support a claim for securities fraud. Therefore, the Court concludes it does not satisfy the statutory requirements for preemption of the Plaintiffs' state law claims under SLUSA.

As to the Defendants' claimed "omission", Mr. Hill's failure to tell his clients that he was selling their securities and repurchasing them three days later, the facts support a claim for unauthorized trading, but are insufficient to establish securities fraud. The Court has studied the cases which Defendants allege support their position that unauthorized trading alone may state a claim for securities fraud. *See,* Def.s' Reply at 11, note 11, *citing, Village of Arlington Heights v. Poder,* 712 F.Supp. 680, 681 (N.D.Ill.1989); *Hometown S & L Ass'n, F.A. v. Moseley Secs. Corp.,* 703 F.Supp. 723, 724 (N.D.Ill. 1988), *declined to follow on other grounds by, First Comics, Inc. v. World Color Press, Inc.,* 884 F.2d 1033 (7th Cir.1989); *Arioli v. Prudential–Bache Secs., Inc.,* 792 F.Supp. 1050 (E.D.Mich.1992); *Cruse v. Equitable Secs. of N.Y., Inc.,* 678 F.Supp. 1023 (S.D.N.Y.1987). Without going through them one by one, the Court notes that in each case, the unauthorized trading took place on more than one occasion, and the unauthorized trades were concealed from the investor. In this case, there were two instances of unauthorized trading three days apart, and no evidence of concealment. The Court concludes that this kind of unauthorized trading, without more, does not constitute securities fraud.

Finally, the Court considers the Defendants' argument that the Supreme Court

opinion in *Zandford* overrules the holding in *Burns*. Def.s' Reply Br. at 11, *citing Zandford*, 535 U.S. at 825, 122 S.Ct. 1899. The Defendants claim that *Zandford* changes the analysis because it recognizes that unauthorized trading may be actionable under § 10(b). *Id.* The Defendants highlight the Supreme Court's statement in *Zandford*, that "misappropriation is not an essential element of the offense." However, this language needs to be put in context. In *Zandford*, the broker made unauthorized sales from the plaintiffs' accounts and misappropriated the money. *Zandford*, 535 U.S. at 815, 122 S.Ct. 1899. By the time one of the clients on the joint account died, all of the money was gone. *Id.* The Supreme Court stated,

> The fact that respondent misappropriated the proceeds of the sales provides persuasive evidence that he had violated § 10(b) when he made the sales, but misappropriation is not an essential element of the offense. Indeed, in *Superintendent of Insurance of the State of New York* v. *Bankers Life*, we flatly stated that it was "irrelevant" that "the proceeds of the sale that were due the seller were misappropriated." 404 U.S. at 10, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). It is enough that the *scheme to defraud and the sale of securities coincide*.

*Zandford*, 535 U.S. at 822, 122 S.Ct. 1899 (emphasis added).

This Court agrees with Defendants' observation that misappropriation is not an element of the offense in a § 10(b) violation, but this case lacks more than just a claim of misappropriation. It lacks any claim at all of a scheme to defraud, much less that the scheme to defraud coincided with the sale of securities. Therefore, *Zandford* does not apply.

### III.   CONCLUSION

In the past, very few securities cases were filed in state court. Plaintiffs tried to get into federal courts with securities fraud claims; defendants tried to keep them out. In the 1990's, the combination of PSLRA and SLUSA turned the tables, and defendants want to get into federal court, in order to dismiss class action plaintiffs' state law claims, and class action plaintiffs want to stay in state court. In order to get into federal court, however, defendants must establish that plaintiffs' complaint alleges a misrepresentation or omission of a material fact in connection with the purchase or sale of securities. The Defendants in this case have failed to establish the essential elements for SLUSA preemption. Therefore, the Defendants' Motion to Dismiss is **DENIED**. The Plaintiffs Motion to Remand is **GRANTED**. This case is remanded to Elkhart Superior Court No. 2.

**IT IS SO ORDERED.**