2008 ND 167

**Astrid ONGSTAD, individually and as Trustee of the Ongstad Family Trust, and on behalf of themselves and all others similarly situated, Plaintiffs and Appellants**

v.

**PIPER JAFFRAY & CO., Defendant and Appellee.**

No. 20070260.

Supreme Court of North Dakota.

Sept. 8, 2008.

Craig A. Boeckel (appeared), Pagel Wei-kum Law Firm, Bismarck, ND; Barbara Quinn Smith (argued), Maddox, Hargett & Caruso, PC, Cleveland, OH; Mark E. Maddox (on brief) and Thomas K. Caldwell (on brief), Maddox, Hargett & Caruso, PC, Fishers, IN, for plaintiffs and appellants.

Todd Ervin Zimmerman (appeared), Fargo, ND; George M. Garvey (argued), Munger, Tolles & Olson, LLP, Los Angeles, CA; James K. Langdon (argued) and Kristina W. Carlson (on brief), Dorsey & Whitney, Minneapolis, MN, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Astrid Ongstad, individually and as trustee of the Ongstad Family Trust, appeals from a district court order amending a prior order and decertifying the class in Ongstad's action against Piper Jaffray & Co. ("Piper Jaffray"). We affirm, concluding Ongstad's attempted class action against Piper Jaffray on state law claims is

preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").

### I

[¶ 2] Ongstad had an individual brokerage account with Piper Jaffray. She also served as trustee of the Ongstad Family Trust, which had a separate brokerage account with Piper Jaffray. Ongstad alleges that in January 2004 her broker at Piper Jaffray sold two mutual fund investments in her individual account and used the proceeds to purchase an annuity. Ongstad claims she did not authorize these transactions or give Piper Jaffray authority to exercise discretion in the account. She further alleges that in March 2004, she gave $35,000 to her broker to purchase an annuity in her individual account. She claims her broker instead diverted $18,000 of those funds to the Trust account to pay premiums on the previously purchased annuity and to purchase a municipal bond. The remaining $17,000 was used to purchase a municipal bond in Ongstad's individual account. Again, Ongstad alleges she did not authorize these transactions. Ongstad claims that these incidents are not isolated, but that Piper Jaffray has engaged in a wide-spread pattern of unauthorized transactions in customer accounts in its Bismarck, Fargo, and Grand Forks offices.

[¶ 3] Ongstad also claims that Piper Jaffray improperly reported one of the unauthorized trades in her accounts as "unsolicited." A transaction must be marked on the trade confirmation as solicited if the broker has initiated or solicited the transaction, or has provided information about the security purchased. A transaction is to be reported as unsolicited only if it was wholly initiated by the client. Transactions reported as solicited are subject to greater supervisory scrutiny and review. Piper Jaffray and its brokers have previously been sanctioned by the North Dakota Securities Commissioner for engaging in unauthorized transactions in customer accounts and improperly reporting the transactions as unsolicited when the clients had not initiated the transactions.

[¶ 4] Ongstad brought this class action on behalf of herself and all other similarly situated Piper Jaffray customers in North Dakota, alleging breach of contract, breach of fiduciary duty, conversion, and negligent supervision. The proposed class consisted of all individuals who maintained brokerage accounts with Piper Jaffray in its Bismarck, Fargo, or Grand Forks offices and whose securities had been traded without authorization after October 1, 1999.

[¶ 5] The district court initially certified the class. Piper Jaffray moved to alter or amend the court's order, arguing that Ongstad's claims were preempted by SLUSA. The district court concluded SLUSA preempted the class action and entered an order decertifying the class. Ongstad appeals, alleging SLUSA does not preempt her attempted class action.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art VI, §§ 2 and 6, N.D.C.C. § 28–27–02, and N.D.R.Civ.P. 23(e)(4).

### II

[¶ 7] The dispositive issue presented on appeal is whether Ongstad's class action is barred by the preemption provision in SLUSA. SLUSA precludes class actions based upon state-law claims in cases involving securities fraud:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be

maintained in any State or Federal court by any private party alleging—

(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1). For purposes of this provision, "covered class action" is defined in 15 U.S.C. § 78bb(f)(5)(B):

The term "covered class action" means—

(i) any single lawsuit in which—

(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or

(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which—

(I) damages are sought on behalf of more than 50 persons; and

(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

[¶ 8] SLUSA was enacted in response to increasing attempts by plaintiffs to avoid the more stringent pleading and procedural requirements under federal securities fraud law by bringing state-law based class actions in state courts. In *Rowinski v. Salomon Smith Barney, Inc.,* 398 F.3d 294, 298–99 (3d Cir.2005), the court outlined the historical underpinnings of SLUSA:

In 1995, Congress enacted the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4 *et seq.* ("PSLRA"), to curb abuses in private class action securities litigation. *See* H.R. Conf. Rep. No. 104–369, at 32–37[, 104th Cong., 1st Sess.] (1995), *reprinted in* 1995 U.S.C.C.A.N. [U.S.Code Cong. & Admin.News] 730, 730–32. The PSLRA implemented a host of procedural and substantive reforms, including "more stringent pleading requirements to curtail the filing of meritless lawsuits." *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 532 (3d Cir.1999) (quoting H.R. Conf. Rep. No. 104–369, at 37).

By 1998, Congress concluded that plaintiffs were circumventing the requirements of the PSLRA by filing private securities class actions in state rather than federal court. SLUSA was designed to close this perceived loophole by authorizing the removal and federal preemption of certain state court securities class actions. *See* 15 U.S.C. § 78a (stating SLUSA aims "to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the Private Securities Litigation Reform Act of 1995"). As the Senate Banking Committee Report explained, Congress envisioned a broad interpretation of SLUSA to ensure the uniform application of federal fraud standards. S.Rep. No. 105–182, [105th Cong., 2nd Sess. 1998] *avail-*

*able at* 1998 WL 226714, *8 (Leg. Hist.) ("[I]t remains the Committee's intent that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition.")

SLUSA preempts, *inter alia,* covered class actions alleging "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A). This language mirrors existing federal securities law under § 10(b) and Rule 10b–5 of the 1934 Act. *See* 15 U.S.C. § 78j(b) (prohibiting fraud "in connection with the purchase or sale of any security"); 17 C.F.R. § 240.10b–5 (2004) (prohibiting, *inter alia,* material misrepresentations and omissions "in connection with the purchase or sale of any security").

*See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,* 547 U.S. 71, 81–82, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006).

■ [¶ 9] A party seeking to invoke application of federal preemption under SLUSA must show that: (1) the action is a "covered class action" under the Act; (2) the action purports to be based upon state law; (3) the action alleges the defendant misrepresented or omitted a material fact, or used or employed a manipulative or deceptive device or contrivance; and (4) the action alleges the defendant's misrepresentations, omissions, manipulations, or deceptions were made in connection with the purchase or sale of a covered security. *E.g., Sofonia v. Principal Life Ins. Co.,* 465 F.3d 873, 876 (8th Cir.2006). Ongstad challenges only the third prong of this four-part test, arguing that her complaint did not allege a "manipulative or deceptive device or contrivance" in connection with the sale or purchase of a covered security.

■ [¶ 10] The fact that Ongstad's complaint does not expressly use terms like "fraud," "misrepresentation," "deception," or "deceptive device" is not determinative of SLUSA's application. Federal courts construing SLUSA have consistently held that they will look to the actual nature of the conduct alleged and that plaintiffs may not avoid SLUSA's preemptive effect by creative or artful pleading. For example, the court in *Rowinski,* 398 F.3d at 301, noted that courts will scrutinize the pleadings "to arrive at the 'essence' of a state law claim, in order to prevent artful drafting from circumventing SLUSA preemption." Similarly, in *Zoren v. Genesis Energy, L.P.,* 195 F.Supp.2d 598, 604 (D.Del.2002), the court recognized that "courts interpreting SLUSA assess preemption based upon whether the complaint read as a whole sets out fraudulent misconduct, regardless of the prayer for relief," and "[a]ny attempt to term the allegations simply as 'background facts' is ineffective." SLUSA will apply if the complaint "implicitly alleges ... misrepresentations and omissions ... made in connection with the purchase of securities." *Professional Mgmt. Assocs., Inc. v. KPMG, LLP,* 335 F.3d 800, 803 (8th Cir. 2003); *see also Rowinski,* at 301. As summarized by the court in *Dudek v. Prudential Sec., Inc.,* 295 F.3d 875, 879 (8th Cir. 2002) (citations and footnote omitted):

When federal and state law provide overlapping remedies, a plaintiff may normally avoid federal question jurisdiction by pleading only a cause of action under state law. However, if Congress has completely preempted a particular area, plaintiff may not avoid federal question jurisdiction and the preemption of state law claims by artfully concealing the federal question in an otherwise well-pleaded complaint under state law.

Congress has not completely preempted the field of securities regulation. But SLUSA expressly preempts all state law

class actions based upon alleged untrue statements or omissions of a material fact, or use of a manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security. Plaintiffs argue SLUSA does not apply to this case because their complaint did not allege fraud or a misrepresentation or omission of material fact. The district court rejected this contention and dismissed plaintiffs' class action because its "gravamen ... involves an untrue statement or substantive omission of a material fact in connection with the purchase or sale of a covered security." We agree.

[¶ 11] Although Ongstad has carefully drafted her complaint to avoid express use of terms like "fraud," "misrepresentation," or "deception," the gravamen of her complaint is clear. She alleges that Piper Jaffray and its brokers engaged in a widespread, systematic scheme to execute unauthorized transactions in customer accounts, and intentionally mismarked trades as unsolicited to avoid detection or discovery of the unauthorized transactions. On its face, the complaint alleges misrepresentations and deceptive conduct.

[¶ 12] Relying upon the federal district court's decision in *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F.Supp.2d 258, 268 (S.D.N.Y.2004), Ongstad argues that SLUSA preemption does not apply, because the mismarking of the trade confirmations does not constitute a "necessary component" or element of her state law claims. A similar argument was rejected by the United States Court of Appeals for the Third Circuit in *Rowinski*, 398 F.3d at 300:

Plaintiff responds that the "breach of contract claim does not involve a misrepresentation or omission." In other words, plaintiff contends that because "misrepresentation" is not an essential

legal element of his claim under Pennsylvania contract law, the factual allegations of misrepresentation included in the complaint are irrelevant to the SLUSA inquiry.

We disagree. Plaintiff's suggested distinction—between the legal and factual allegations in a complaint—is immaterial under the statute. SLUSA preempts any covered class action "alleging" a material misrepresentation or omission in connection with the purchase or sale of securities. 15 U.S.C. § 78bb(f)(1). Under this provision, preemption does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are "alleged" in one form or another. A contrary approach, under which only essential legal elements of a state law claim trigger preemption, is inconsistent with the plain meaning of the statute. Furthermore, it would allow artful pleading to undermine SLUSA's goal of uniformity—a result manifestly contrary to congressional intent. 15 U.S.C. § 78a ("The Congress finds that ... it is appropriate to enact national standards for securities class action lawsuits involving nationally traded securities[.]"); S.Rep. No. 105–182, [105th Cong., 2nd Sess. 1998,] *available at* 1998 WL 226714, *8 ("[I]t remains the Committee's intent that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition.").

Where, as here, allegations of a material misrepresentation serve as the factual predicate of a state law claim, the misrepresentation prong is satisfied under SLUSA.

We agree with the rationale and reasoning of the court in *Rowinski*.

[¶ 13] Ongstad further argues that unauthorized trading, by itself, does not constitute securities fraud, citing *Magyery v. Transamerica Fin. Advisors, Inc.*, 315 F.Supp.2d 954 (N.D.Ind.2004), and *Burns v. Prudential Sec., Inc.*, 116 F.Supp.2d 917 (N.D.Ohio 2000). In each of those cases a single broker, apparently believing that a market collapse was imminent, essentially liquidated all securities in the accounts of his customers. In each case, the parties did not dispute that there was no fraudulent intent, ill will, or personal gain, and the broker was attempting in good faith to preserve clients' assets for their benefit. Each case presented a single occurrence under unique circumstances. The court in each of those cases, stressing that the unauthorized trades were not part of a plan or ongoing scheme to defraud, concluded that the preemption provision of SLUSA did not apply.

[¶ 14] *Magyery* and *Burns* are clearly distinguishable from this case. Ongstad asserts Piper Jaffray and its brokers employed a widespread, systematic scheme throughout its North Dakota branch offices, involving multiple brokers and stretching over a period of several years, to conduct unauthorized trades in customer accounts. Ongstad also alleges trade confirmations were intentionally mismarked to avoid detection of those trades. Rather than agreeing that the broker acted in a single isolated instance, in good faith for the clients' benefit, and without fraudulent intent or personal gain, Ongstad's complaint describes Piper Jaffray's conduct using terms such as "intentionally, knowingly, and/or recklessly"; "willful, wanton, reckless, and flagrant"; "wrongful"; "consistently engaged in a pattern and practice"; and "widespread throughout Piper Jaffray's North Dakota offices." Ongstad also sought punitive damages "to punish [Piper Jaffray] for its wrongful conduct ... and thereby deter it and other

similarly situated persons from similar misconduct in the future." Ongstad also relied upon evidence of prior enforcement action by the North Dakota Securities Commissioner to bolster her claims, and three consent orders sanctioning Piper Jaffray and its brokers for unauthorized trading and improper marking of trade confirmations were attached to and referenced in the complaint. The Commissioner clearly took the position that Piper Jaffray's conduct constituted securities fraud, noting in a July 10, 2006, letter addressing settlement of a pending investigation that "[t]o the extent that these transactions were improperly marked to attempt to mask other violations, the improperly marked transactions would definitely constitute fraudulent conduct." The Commissioner further noted the widespread extent of Piper Jaffray's misconduct:

> This systematic conduct resulted in an estimated 4,700 improperly marked transactions during a sixteen month period. The estimate is believed to be a low estimate because it is an extrapolation based on a subset of Piper's North Dakota client base, and is not representative of the entire client base of Piper.

[¶ 15] We conclude that the decisions in *Magyery* and *Burns*, which were limited to the extraordinary and unique circumstances presented in those cases, are wholly inapplicable here. Although Ongstad has sought to avoid the relevant buzzwords in her complaint, it nevertheless on its face alleges misrepresentations, omissions, deceptive practices, and a widespread scheme to defraud.

[¶ 16] We also note that the federal district court decisions in *Magyery* and *Burns* predate the United States Supreme Court's decision in *Dabit*, and their continued validity is therefore questionable. Prior to the Court's decision in *Dabit*,

there had been disagreement among the federal courts about the breadth and extent of SLUSA's preemptive provisions. *See Dabit*, 547 U.S. at 74, 126 S.Ct. 1503; *Siepel v. Bank of America, N.A.*, 526 F.3d 1122, 1126–27 (8th Cir.2008). The Court resolved the issue in *Dabit*, at 86, 126 S.Ct. 1503, stressing that Congress intended SLUSA's preemptive provisions to be broadly construed:

> The presumption that Congress envisioned a broad construction follows not only from ordinary principles of statutory construction but also from the particular concerns that culminated in SLUSA's enactment. A narrow reading of the statute would undercut the effectiveness of the 1995 Reform Act and thus run contrary to SLUSA's stated purpose, viz., "to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives" of the 1995 Act.

After *Dabit*, it is clear SLUSA's preemptive reach is to be construed broadly, and as coextensive with federal regulatory authority over securities fraud under Section 10b and Rule 10b–5:

> [T]he Supreme Court rejected wholesale the proposition that limitations on private Rule 10b–5 actions may be applied to limit the scope of SLUSA. To the extent that we have suggested, pre-*Dabit*, that the scope of SLUSA preemption is equal to that of the right to a private Rule 10b–5 action, the Court has corrected our course. SLUSA's coverage follows the contours of Section 10(b) and Rule 10b–5 when enforced by an agency of the United States.

*Siepel*, at 1127 (citations omitted). It is "well-settled" that securities fraud claims arise under Rule 10b–5 "when brokers purchase or sell securities on their client's behalf without specific authorization." *Caiola v. Citibank, N.A.*, 295 F.3d 312, 323 (2d Cir.2002); *see also Siepel*, at 1127.

[¶ 17] We conclude that Ongstad's complaint alleges misrepresentations or omissions of material fact, or employment of deceptive devices, in connection with the purchase or sale of a covered security. *See* 15 U.S.C. § 78bb(f)(1). Accordingly, Ongstad's class action is barred by the preemption provisions of SLUSA.

[¶ 18] In reaching this conclusion, we recognize that all that is barred is Ongstad's ability to bring her state-law claims in a class action. Ongstad retains the ability to otherwise litigate her state-law claims against Piper Jaffray. As we noted in *Strand v. U.S. Bank Nat'l Ass'n ND*, 2005 ND 68, ¶ 21, 693 N.W.2d 918, the right to bring a class action is "purely a procedural right," and "[m]erely restricting the availability of a class action is not, by itself, a restriction on substantive remedies." The United States Supreme Court similarly concluded:

> In concluding that SLUSA pre-empts state-law holder class-action claims of the kind alleged in Dabit's complaint, we do not lose sight of the general "presum[ption] that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). But that presumption carries less force here than in other contexts because SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class-action device to vindicate certain claims. The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist.

*Dabit*, 547 U.S. at 87, 126 S.Ct. 1503.

### III

[¶ 19] We have considered the remaining issues and arguments raised by the

parties and find them to be either unnecessary to our decision or without merit. We conclude Ongstad's class action against Piper Jaffray is preempted by SLUSA, and the district court did not err in decertifying the class. The order amending the district court's prior certification order and decertifying the class is affirmed.

[¶ 20] MARY MUEHLEN MARING, Acting C.J., CAROL RONNING KAPSNER, DANIEL J. CROTHERS, JJ., and DANIEL D. NARUM, D.J., concur.

[¶ 21] The Honorable DANIEL D. NARUM, D.J., sitting in place of VANDE WALLE, C.J., disqualified.